WILLIAM C. CAMERON *vs.* GUNSTOCK ACRES, INC. & another.[1]

Plymouth.    March 3, 1976. — June 3, 1976.

Present: REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Contract,* Validity.    *Sunday.    Conflict of Laws.*

A contract for the sale of real estate which was executed on Sunday was valid and enforceable under the law of New Hampshire where there was no indication that solicitation by the seller took place on Sunday.  [380]

A question as to the validity of a contract for an instalment sale of land in New Hampshire, which was executed in New Hampshire and explicitly provided that it was governed by the laws of New Hampshire, was to be resolved in accordance with New Hampshire law. [381-382]

BILL IN EQUITY filed in the Superior Court on May 17, 1972.

The suit was heard by *Hallisey,* J., on a master's report.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Albert E. Grady (James J. D'Ambrose* with him) for the plaintiff.

*Robert A. Greeley (Harold Stavisky* with him) for the defendants.

BRAUCHER, J.    A Massachusetts buyer executed in New Hampshire a contract for the purchase of New Hampshire

_____

[1] New England Properties, Inc.

land from a New Hampshire corporation, and the buyer seeks a declaration that the contract is void because it was executed on Sunday. We hold that the question is governed by New Hampshire law and that the contract is valid. We therefore direct the entry of a judgment so declaring.

The plaintiff filed his bill in equity for declaratory relief in May, 1972. The suit was referred to a master, the master's report was confirmed by a judge of the Superior Court, and a final decree was entered dismissing the bill. The plaintiff appealed to the Appeals Court, and we transferred the case to this court on our own motion.

We summarize the facts disclosed by the written contract and the master's report. The contract names the defendant Gunstock Acres, Inc., a New Hampshire corporation, as seller and the plaintiff, of Brockton, Massachusetts, as buyer. The defendant New England Properties, Inc., is a successor to Gunstock Acres, Inc., and is the proper defendant. "Gunstock Acres" is a vacation, retirement home type development in New Hampshire, and solicitations are made by mail and through the media for a free weekend to review the development. In response to such an invitation the buyer went to the development with friends on Friday, January 24, 1969. On Sunday morning, January 26, 1969, after discussions with a salesman, the buyer signed the contract, dated January 25, 1969, and delivered a check for $100.

Subsequently the buyer made a down payment and paid twenty-eight monthly instalments, paying more than $3,800 toward the purchase price of $6,495. He made several visits to the property, the last in October, 1972, and observed roads in rough condition. He had correspondence with the seller relating to delinquent payments and possible sale of the lot. In August, 1971, he went to the seller's office in Fitchburg, Massachusetts, and was told that finding a buyer would be his responsibility. He was unsuccessful in finding a buyer.

Among other things the contract provides that it is the entire agreement between the parties, that the seller has a reasonable time to construct roads and improvements, not

exceeding five years, and that it is governed by the laws of New Hampshire. The master found that there was no material misrepresentation as to the completion of the development and insufficient evidence of misrepresentation as to interest charges, and that the development was being constructed, perhaps slowly, but that it was not abandoned or terminated.

The plaintiff's principal contention is that the contract is invalid under both Massachusetts and New Hampshire law because executed on Sunday. He also contends that the contract violates the New Hampshire credit disclosure statute, N.H. Rev. Stat. Ann. c. 399-B:2 (1968 repl. ed.), inserted by Laws of 1961, c. 245:7, that the master erred in recommending that the bill be dismissed, that the buyer has the rights of a mortgagor, that the contract fails for want of consideration, impossibility, failure of a condition and unconscionability, and that the retention by the seller of the buyer's payments amounts to an invalid penalty.

1. *New Hampshire Sunday law.* We take judicial notice of New Hampshire law. G. L. c. 233, § 70. In 1969 N.H. Rev. Stat. Ann. c. 578:3, later repealed by Laws of 1973, c. 532:26 IX, forbade work of a secular calling on Sunday "to the disturbance of others." In *Brown* v. *Teel*, 108 N.H. 365, 367 (1967), overruling prior cases, the court reversed a ruling that an exclusive real estate listing agreement was invalid and unenforceable under the statute. It appeared "that the parties were willingly assembled in the defendants' private home, without solicitation by the plaintiff, for the purpose of executing an agreement authorizing the sale of the defendants' home by the plaintiff. Under any realistic meaning of the phrase in the twentieth century this cannot be considered an activity 'to the disturbance of others' as used in RSA 578:3." In the present case there was solicitation by the seller, but there is no indication that it took place on Sunday. We think that under New Hampshire law the case is governed by *Brown* v. *Teel*.

2. *Massachusetts Sunday law.* The Common Day of Rest Law, G. L. c. 136, inserted by St. 1962, c. 616, § 2, imposes fines for doing business on Sunday, subject to

numerous exceptions. §§ 5-7. *Ralph's Mkt. Inc.* v. *Beverly*, 353 Mass. 588, 589-590 (1968). One exception covers the "showing for sale or for rental of non-commercial real property to be used for residential purposes." § 6 (9). For the history of prior statutes, see *Gallagher* v. *Crown Kosher Super Mkt. of Mass. Inc.* 366 U.S. 617, 624-630 (1961), upholding their constitutionality.[2] Cf. *Commonwealth* v. *Chamberlain*, 343 Mass. 49, 51-53 (1961). The 1962 statute was a comprehensive revision stimulated by the *Crown Kosher* decision. See 1962 Senate Doc. No. 404, at 13-14.

"For many years a general common-law doctrine has obtained, in Massachusetts and elsewhere, that a document executed on Sunday might be tainted with the illegality of other Sunday activity and so might be invalid. The doctrine has not been popular with courts. Judges in Massachusetts and elsewhere have frequently found reasons in the facts of this or that case to uphold the papers in question." *Id.* at 43. See 6A A. Corbin, Contracts §§ 1478-1479 (1962); 14 S. Williston, Contracts §§ 1700-1710 (3d ed. 1972); Note, 39 B.U.L. Rev. 543, 553-560 (1959).

We do not seem to have considered the civil consequences of a violation of the Sunday law since the comprehensive revision of the statute in 1962. Recently we discussed the principles governing consequences beyond those prescribed by criminal statutes, referring to "the sentimental fallacy of piling on sanctions unthinkingly once an illegality is found." *Town Planning & Eng'r Associates, Inc.* v. *Amesbury Specialty Co.*, 369 Mass. 737, 745-747 (1976). But in view of our conclusion on the choice of law issue we do not pursue the point further.

3. *Choice of law.* The contract here in question was executed on Sunday in New Hampshire. It provided for an instalment sale of land in New Hampshire, and explicitly provided that it was governed by the laws of New Hampshire. Traditionally we have held that the law of the place

---

[2] See also Grinnell, The Constitutional History of the Supreme Judicial Court of Mass. from the Revolution to 1813, 2 Mass. L.Q. 357, 485-488 (1917), describing the indictment of two judges of this court for traveling on Sunday in 1791.

where a contract is made governs its validity. *Dicker* v. *Klein*, 360 Mass. 735, 736 (1972). See Fine, Mass. Contract Cases and Problems in the Choice of Law, 43 Mass. L.Q., No. 3 at 46, 52 (1958). We have applied that law to the validity of contracts made on Sunday in other States. *Hazard* v. *Day*, 14 Allen 487, 494-496 (1867) (Rhode Island law). *Murphy* v. *Collins*, 121 Mass. 6 (1876) (New York law). See Annot., 67 A.L.R.2d 694, 696 (1959). Almost any other rule would lead to the same result on the present facts. See Restatement (Second) of Conflict of Laws § 187 (law chosen by the parties), § 188 (State having most significant relationship to the transaction), § 189 (State where the land is situated), § 202 (effect of illegality) (1971); Davies & Rathke, Choice of Law based on the Seat of the Relationship, 10 Valparaiso L. Rev. 1, 11-12 (1975). We therefore apply the New Hampshire Sunday law, under which the contract is not illegal.

4. *Other issues.* We have considered the other issues argued in the plaintiff's brief, but find none of them worthy of extended discussion. Nothing in the record shows that the New Hampshire credit disclosure law was brought to the attention of the master or the judge. A purchaser under an instalment land contract resembles a mortgagor in some respects. *Barrell* v. *Britton*, 244 Mass. 273, 278-279 (1923). But the plaintiff does not tell us what rights he claims under the law of New Hampshire, which would seem to control any mortgage analogy. Cf. *Churchill* v. *Bigelow*, 333 Mass. 196, 198 (1955). His other contentions are foreclosed by the findings of the master.

5. *Disposition.* The bill should not have been dismissed. *Dunphy* v. *Commonwealth*, 368 Mass. 376, 384 n.5 (1975), and cases cited. The final decree is reversed. Judgment is to be entered declaring that the contract is valid and enforceable.

*So ordered.*