**Peggy H. SCHULHOF et al., Plaintiffs,**

v.

**NORTHEAST CELLULOSE, INC., et al., Defendants.**

**Alice C. SLIVERS et al., Plaintiffs,**

v.

**NORTHEAST CELLULOSE, INC., et al., Defendants.**

Civ. A. Nos. 79–1205–G, 79–1412–G.

United States District Court,
D. Massachusetts.

Aug. 27, 1982.

Timothy J. Healey, Healey & Farrell, Norwood, Mass., Robert R. Smiley, Washington, D. C., for plaintiffs.

Jerome M. Leonard, Ropes & Gray, Boston, Mass., for Samuel A. Tamposi, Gerald Nash, James Stellos Indiv. and dba Nash Tamposi Flight Operation.

Franklin N. Cunningham, Ralph T. Lepore III; Leonard Kopelman, Kopelman & Paige, Boston, Mass., for Northeast Cellulose, McKee, Scofield.

Salvatore F. Stramondo, Boston, Mass., David Bradley, Stebbins & Bradley, Hanover, N. H., for Whitcomb Const. Corp.

## MEMORANDUM AND ORDERS ON CHOICE OF LAW ISSUES

GARRITY, District Judge.

These consolidated cases arise out of a midair collision of two small aircraft over Gardner, Massachusetts in January, 1979, which resulted in the deaths of all five persons aboard the planes. Because the collision implicates interests of three states, we decided to consider conflict of law issues in advance of trial. The court received briefs from all parties and heard argument on May 21, 1982. In their briefs and at that hearing, various parties raised five issues for determination regarding the applicable law: tort liability, compensatory damages, punitive damages, contract liability, and contribution between tortfeasors. At a subsequent pretrial conference on June 24, 1982 the court deferred decision on two other issues—prejudgment interest and plaintiff's motion to strike affirmative defenses—upon suggestion of the parties and according to a schedule announced in open court. The court stated its tentative conclusion that Massachusetts law governed most of the five issues the parties had identified, but stated its intention to study the question further. After further consideration, the court issues this memorandum consistent with the conclusion stated in open court on June 24, 1982.

### Relevant Facts[1]

This case arises from a collision over Gardner, Massachusetts, on January 11, 1979 between a Piper Aerostar and a Piper Navajo. The Piper Aerostar was owned by defendant Northeast Cellulose, a Massachusetts corporation, and carried as its passenger, William J. Slivers, a decedent whose domicile was, like that of his personal representative and heirs, New York. Slivers had been in Massachusetts on business. The Aerostar was transporting him from Boston's Logan Airport to Syracuse, New York, via Gardner. The Piper Navajo was owned by the Nash-Tamposi Flight Operation, which was a New Hampshire partnership, and carried as its passenger Mr. Ronald Schulhof, who was, like his personal representative and heirs, a New York domiciliary. The Navajo was to transport Schulhof from Concord, New Hampshire, to White Plains, New York. The Navajo was operated, on this trip, either by Sidney Clarkson, Jr., an employee of Nash-Tamposi, or by Kevin Hawkes, an employee of defendant Frank W. Whitcomb Construction Co., a New Hampshire corporation. The identity of the person operating the aircraft is a disputed issue in this case. Resolution of that issue does not affect consideration of these choice of law issues, however, since both defendants allegedly liable under a *respondeat superior* theory are from New Hampshire.

■ Since subject matter jurisdiction in these cases is founded upon diversity, the court must apply the substantive law a state trial court would properly follow, *Erie Railroad Co. v. Tompkins*, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, including the conflict of laws rules of the state courts of the forum. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. This court must therefore seek to determine what law a state trial court in Massachusetts would be compelled to apply.

Massachusetts has traditionally followed *lex loci delicti* as the general conflict of laws rule in tort actions for physical injuries. See, e.g., *Brogie v. Vogel*, 1965, 348

1. By referring to the statements in this section as "facts" the court does not, of course, rule that the matters stated here are "facts" for purposes of adjudicating the rights and liabilities of any party. Determination of the "facts" in this case is within the province of the jury. Fed.R.Civ.P. 39(a). A court cannot decide choice of law issues, however, in a factual vacuum but must instead anchor its decision in the context of particular events and assumptions. In issuing this memorandum, the court relies upon statements which appear undisputed. Also, to the extent that facts are undisputed, the court expects the parties to agree upon stipulations to be submitted at the final pretrial conference on December 23, 1982.

Mass. 619, 621, 205 N.E.2d 234; *Goodale v. Morrison*, 1962, 343 Mass. 607, 610, 180 N.E.2d 67. Rigid adherence to that rule has been widely criticized, see, e.g., Von Mehren and Trautman, *The Law of Multistate Problems: Cases and Materials on Conflict of Laws* (1965). In recent years, Massachusetts has abandoned its former disposition to apply *lex loci delicti* automatically for a more flexible approach.

The leading case in Massachusetts regarding choice of law in torts is *Pevoski v. Pevoski*, 1976, 371 Mass. 358, 358 N.E.2d 416. The Pevoskis, a Massachusetts married couple, were involved in an auto collision in New York. The wife-passenger sued the husband-driver for damages in Massachusetts Superior Court. New York law provided that a wife could sue her husband; Massachusetts law, at the time of the accident, was thought to include the doctrine of interspousal immunity. Apparently relying on the old Massachusetts rule, the Superior Court judge granted the husband's motion for summary judgment.

The Supreme Judicial Court reversed. Although the accident occurred in New York, the state's highest court applied Massachusetts law on the issue of whether one spouse could sue the other. It reasoned that *lex loci delicti* "has provided, and will continue to provide, a rational and just procedure for selecting the law governing the vast majority of issues in multi-State tort suits." But, it continued, "we recognize that there also may be particular issues on which the interests of lex loci delicti are not so strong. Indeed on the particular facts of a case another jurisdiction may sometimes be more concerned and more involved with certain issues than the State in which the conduct occurred." *Ibid* at 359–60, 358 N.E.2d 416. In *Pevoski*, the Supreme Judicial Court concluded, New York had an interest in regulating conduct which occurred within its borders but it did not have an interest in regulating the relationship between spouses domiciled in Massachu-

setts. Rather, Massachusetts law should govern that issue.[2] Essentially, then, *Pevoski* stands for the following propositions of law relevant to these cases: (a) *lex loci delicti* would continue as the general tort conflicts rule governing most issues in multi-state tort suits, but that (b) on some particular issues another jurisdiction might have a stronger interest such that the law of that jurisdiction should control. (c) Moreover, *Pevoski* ruled that the law of a single jurisdiction would not necessarily govern all issues in a case. *Pevoski v. Pevoski, supra* at 359–61, 358 N.E.2d 416.

▮ Although the Supreme Judicial Court did not explicitly embrace the approach of Restatement (Second) of Conflict of Laws, §§ 145, 146, it did say that the disposition of issues "'must turn ... on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented.'" *Pevoski v. Pevoski, supra* at 360, 358 N.E.2d 416 quoting *Babcock v. Jackson*, 1963, 12 N.Y.2d 473, 484, 240 N.Y.S.2d 743. This test is the standard of Restatement (Second) of Conflict of Laws, §§ 145, 146, and we construe the reference by the Supreme Judicial Court to it as an endorsement of the tort approach of the Restatement (Second). See also *Engine Specialties, Inc. v. Bombardier Ltd.*, 1 Cir. 1979, 605 F.2d 1, 19, *cert. denied* 1980, 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839; *In re Air Crash Disaster at Boston, Massachusetts, on July 31, 1973*, D.Mass., September 29, 1981, M.D.L. No. 160–N, pp. 5–6; *Payton v. Abbott Labs*, D.Mass.1979, 83 F.R.D. 382, 386 n. 1.

The general provisions of Restatement (Second) of Conflict of Laws that are most relevant to our inquiry here are sections 6, 145 and 146. Section 6 states general choice-of-law principles and is incorporated by reference in Sections 145 and 146. It provides:

§ 6. Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

**2.** The Supreme Judicial Court went on to hold that its decision in *Lewis v. Lewis*, 1976, 370 Mass. 619, 629, 351 N.E.2d 526, in which it

abrogated the interspousal immunity rule in cases involving circumstances similar to *Lewis* governed *Pevoski*, too.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

 (a) the needs of the interstate and international systems,

 (b) the relevant policies of the forum,

 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

 (d) the protection of justified expectations,

 (e) the basic policies underlying the particular field of law,

 (f) certainty, predictability and uniformity of result, and

 (g) ease in the determination and application of the law to be applied.

Section 145 states, as the general principle for tort issues, that:

**§ 145. The General Principle**

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

 (a) the place where the injury occurred,

 (b) the place where the conduct causing the injury occurred,

 (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

 (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Section 146 governs personal injuries and provides:

**§ 146. Personal Injuries**

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

*Liability*

 ■ It seems clear that a Massachusetts court would apply Massachusetts law to determine the rights and liabilities of the parties. The collision between the two aircraft occurred over Gardner, Massachusetts. That fact, in itself, points strongly to Massachusetts tort law. Although Massachusetts and the Restatement (Second) of Conflict of Laws have abandoned the former tendency to apply *lex loci delicti* to all issues in tort cases, they both continue to recognize its merit regarding rules regarding conduct. The Supreme Judicial Court wrote in *Pevoski* that "[lex loci delicti] has provided, and will continue to provide, a rational and just procedure for selecting the law governing the vast majority of issues in multi-State tort suits. For example, in motor vehicle torts such as the one at bar standards of negligence will be appropriately furnished by the law of the jurisdiction in which the accident occurred. Rules of the road are determined quite properly by the State in which these roads are located— by the jurisdiction having the strongest interest in regulating the conduct of drivers on these highways." *Pevoski v. Pevoski, supra* 371 Mass. at 359, 358 N.E.2d 416. That statement is consistent with the principle articulated in § 146 that the local law of the place of the injury will govern the rights and liabilities of parties in actions for recovery for personal injury unless some other state has a "more significant relationship" with a particular issue.[3]

---

**3.** It should be noted that these suits seek recovery for wrongful death, not for personal injury. Thus, the relevant section of Restatement (Second) of Conflict of Laws is § 175 entitled "Right of Action for Death" rather than § 146 "Personal Injuries." The two sections apply the same test, however. See Comment a to § 175.

■ Of course, an obvious distinction between *Pevoski* and this case is that we deal here with a collision between planes in the air, not one between cars on a highway. There may be a sense in which a state has a lesser interest in regulating the air above it than it does in governing the roads which run through it. There may also be instances in which the location of an air crash is more fortuitous than that of a collision involving vehicles that operate on land. We do not believe these distinctions suggest that a Massachusetts court would or should apply a different rule for an air collision at least under the facts present here. Massachusetts quite clearly has a strong interest in deterring conduct which causes injury over Massachusetts just as it has compelling grounds for regulating conduct which causes harm on its soil. Tortious behavior in the air above a state is likely to damage persons and property of that state. Moreover, that this collision occurred over Massachusetts is no more fortuitous than, for instance, that the accident in *Pevoski* involving three cars driven by Massachusetts residents occurred in New York. The Piper Aerostar took off from Logan Airport in Boston. The Piper Navajo was, by design, flying through Massachusetts airspace en route to White Plains, New York. Thus, we agree with our colleague Judge Nelson that, consistently with *Pevoski*, "rules of the air should ordinarily be determined by reference to the law of the state in which the air is located." *In re Air Crash Disaster at Boston, Massachusetts, on July 31, 1973, supra* at p. 7.

We have identified Massachusetts' interest in regulating conduct above its soil. We do not see that any other state has a more significant, or even an equally significant, relationship to these rules of the road issues to warrant applying its law to liability issues. Accordingly, we hold that Massachusetts tort law will govern issues regarding the evaluation of the conduct of the parties. We note, however, that whether some conduct was tortious may depend on the content of rules and regulations formulated pursuant to federal authority. See *Federal Express Corp. v. Rhode Island*, 1 Cir. 1981,

664 F.2d 830, 835; *Delta Air Lines v. United States*, 1 Cir. 1977, 561 F.2d 381, 390, cert. denied 1978, 434 U.S. 1064, 98 S.Ct. 1238, 55 L.Ed.2d 764. Just as federal law may incorporate state tort law in certain instances, see, e.g., Federal Tort Claims Act, 28 U.S.C. § 1346, here Massachusetts state law in effect incorporates various federal standards.

### Damages Generally

We turn next to the question of damages. The parties raise two issues—what law governs the availability of punitive damages and what law governs compensatory damages. The Second Restatement provides, in § 178, that "[t]he law selected by application of the rule of § 175 determines the measure of damages in an action for wrongful death." Section 175 provides that "the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." The "state where the injury occurred" is clearly Massachusetts "where the force set in motion by the actor first [took] effect on the person" rather than the place where the pecuniary loss from the death is felt. See Comment b to § 175. Massachusetts law thus governs damage issues unless with respect to a particular issue some other state has a more significant relationship. We consider the issues of punitive and compensatory damages in turn.

### Punitive Damages

■ We begin by identifying the different states whose laws might be relevant based on contacts with the occurrence. These are Massachusetts, the place of the collision and the state of incorporation and principal place of business of defendant Northeast Cellulose; New Hampshire, the place of incorporation and principal place of business of defendant Whitcomb Construction Co. and the domicile of defendants Nash, Tamposi, Stellos, and the state of

formation of, and principal place of business of, their partnership; and New York, the domicile of the plaintiffs and their decedents. Next we identify the laws of the different jurisdiction regarding punitive damages. Massachusetts allows recovery of punitive damages of not less than $5000 where defendant's malicious, wilful, wanton or reckless conduct or gross negligence caused decedent's death. Mass.G.L. c. 229, § 2. New York explicitly prohibits punitive damages.[4] The New Hampshire statute, while enumerating various elements of damage, makes no mention of punitive damages, and the parties have all assumed that New Hampshire law would not allow them. In deciding whether some state has a more significant relationship to this issue than does Massachusetts (the place of the injury) we consider the] principles listed in § 6 of the Restatement (Second) of Conflict of Laws. See Restatement (Second) of Conflict of Laws, §§ 175, 178. Of the seven factors listed, items b and c—the relevant policies of the forum and the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue—are most important.

We know of no Massachusetts cases or legislative history which shed light on the purposes animating the punitive damage provision in the Massachusetts statute. Generally speaking, however, "[t]he purposes underlying the allowance of punitive damages . . . are punishment of the defendant and deterrence of future wrongdoing." *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 7 Cir. 1981, 644 F.2d 594, 613 cert. denied, 1981, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187; *Valcourt v. Hyland*, D.Mass.1980, 503 F.Supp. 630, 639. Massachusetts has a strong interest in applying its punitive damage provision. As

the place of the wrong, it has an interest in deterring behavior which causes injury and death within its borders. Its punitive damage provision represents a legislative decision that ordinary tort damages do not sufficiently deter "willful, wanton or reckless" acts causing death. Mass.G.L. c. 229, § 2. New York and New Hampshire, the other jurisdictions that are ostensibly interested in this case, do not allow awards of punitive damages. States which disallow exemplary awards generally do so to protect defendants from excessive liability, *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979, supra* at 613, thereby inducing businesses to locate or transact economic affairs in their state. Although New York has expressed its policy against punitive damages strongly, it has no interest in applying its law to this case. Since none of the defendants are New York domiciliaries and since the accident did not occur in New York, the protective purpose of the New York statute is irrelevant here. As the plaintiffs' domicile, New York has an interest that plaintiffs be fully compensated, something punitive damages do not address directly.[5] New York has no interest in its domiciliaries receiving a windfall, but neither does it have an interest in limiting their recovery from foreign corporations for torts committed elsewhere. New Hampshire has, of course, an interest in protecting its businesses from large liabilities. But its relationship with this issue is not significant enough to overcome the preference the Second Restatement and Massachusetts law assign to the law of the place of the injury; nor is New Hampshire's relationship even as significant as that of Massachusetts. New Hampshire cannot properly assert its policy of protecting local entrepreneurs in a manner which impinges upon

---

**4.** New York has apparently recently adopted a statute allowing punitive damages in wrongful death actions where the death occurred after September 1, 1982. That statute does not govern this case, and we do not consider it in deciding this case.

**5.** It is true that allowance of punitive damage awards may ensure that full compensation does occur. A compensatory award may not cover

all damage a plaintiff has suffered and will usually be reduced by the need to pay attorney's fees and other costs. Punitive damages may reimburse a plaintiff for amounts by which his compensatory award is so taxed. There is no suggestion that this policy motivated any of the statutes here in question, so we think it irrelevant for this case.

the interest of another jurisdiction in regulating conduct within its own borders. Moreover, in view of the fact that the New Hampshire wrongful death statute omits all reference to punitive damages instead of explicitly prohibiting them, the strength of that policy is open to question.

Other considerations listed in § 6 also support application of Massachusetts law. It is consistent with the basic tort policy of deterring reckless and willful misconduct and is determined and applied with ease. Moreover, we have not decided to apply the Massachusetts statute because we believe a forum state is justified in preferring its own laws to that of other jurisdictions in multistate torts. Rather, we believe under the facts present here the Massachusetts statute should apply regardless of what forum plaintiffs had chosen.

*Compensatory Damages*

 The most difficult issue involves the question of what law should govern the award of compensatory damages. Under the Second Restatement, the law of the state of the injury (Massachusetts) governs unless some other state has a more significant relationship with the occurrence and parties. Restatement (Second) Conflict of Laws, §§ 175, 178. It is clear, at the outset, that New Hampshire has no such relationship. Compensatory damages serve to reimburse plaintiffs for their pecuniary loss. New Hampshire, as the home of all defendants but one, has no apparent interest in assuring that foreign plaintiffs receive compensation for injuries arising out of an occurrence elsewhere.[6] New York, however, as the domicile of all plaintiffs, does have an interest in the level of compensation its citizens receive. The question then becomes whether New York has a more significant relationship with that issue than does Massachusetts.

Defendants have directed the court's attention to the opinion in *In re Air Crash Disaster at Boston, Massachusetts on July 31, 1973*, D.Mass., September 29, 1981,

M.D.L. No. 160–N, which held, in part, that Massachusetts law would not govern damages in a case in which a Florida plaintiff sought recovery for the loss of Florida decedents from an airplane crash in Massachusetts. That case is distinguishable in critical respects from the present one. It involved the prior Massachusetts statute which rested on a diametrically different policy rationale. The earlier Massachusetts wrongful death act assessed damages based solely on the wrongfulness of defendant's conduct and limited recovery. Its purpose was "to protect citizen defendants from excessive liability and to regulate conduct by assessing damages solely on the basis of culpability." *In re Air Crash Disaster at Boston, Massachusetts on July 31, 1973*, D.Mass.1975, 399 F.Supp. 1106, 1118. Those policies were irrelevant to the 1973 case, which involved no "citizen defendants." Moreover, the policies of the prior Massachusetts act conflicted with the compensatory purpose of the Florida statute. Here, however, there is no indication that the New York and Massachusetts wrongful death acts differ on compensatory damages. The New York statute provides "fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought." The Massachusetts statute awards "the fair monetary value of the decedent to the persons entitled to receive the damages recovered" and identifies certain types of damages. G.L. c. 229, § 2. Absent a contrary showing, these appear to provide the same recovery.

There is a second reason for applying the Massachusetts law. It is a comprehensive statute serving compensatory and deterrent purposes. We have already decided to apply its punitive damage provision. We could, of course, apply parts of one state's law regarding liability on compensatory damages and part of another state's, on punitive damages. The danger in doing so, however, is that the result might be one

---

**6.** Of course, New Hampshire might have an interest if its law regarding recovery of compensatory damages for wrongful death included policies designed to protect defendants by limiting recovery. No such policy applicable to this case has been suggested.

that neither state would allow. When a court combines elements of the laws of different states it may upset the delicate balance achieved by legislative compromise.

Thirdly, although the Massachusetts statute is viewed as compensatory, it also serves a deterrent effect independent of its punitive damage provisions. In eliminating the limits on wrongful death recovery, the Massachusetts legislature not only provided more complete compensation but also greater deterrence. Thus, Massachusetts also has an interest in application of its law on compensatory damages—deterring accidents in Massachusetts.

Thus, we decide at this juncture, subject to possible reconsideration, to apply the Massachusetts wrongful death act on compensatory as well as punitive damages. If, however, the parties show that New York law differs in a material way such that New York has a greater interest in the application of its law or that New York would allow damages different from those Massachusetts specifies, we would give further consideration to applying New York law on compensatory damages in whole or in part.

### Cross Claims

Nash-Tamposi and Whitcomb have filed cross claims against each other. Nash-Tamposi's first count claims indemnity apparently on a *res ipsa loquitur* theory; its second claim for indemnity rests on a contract between it and Whitcomb; and its third claim seeks contribution from a joint tortfeasor. Whitcomb relies on a breach of contract between Nash-Tamposi and Whitcomb and a contract of indemnity between those two parties.

■ Nash-Tamposi and Whitcomb would appear to be the only parties interested in this issue. The parties have not referred to, nor has the court found, any cases stating how Massachusetts treats this conflicts issue. The general rule regarding contribution among tortfeasors is that the law where the injury and conduct occurred governs unless another state has a greater interest. According to the Restatement (Second) of Conflict of Laws, "[i]f both tortfeasors are domiciled in the same state, and particularly, if in addition there is a special relationship between them which is centered in that state, it would seem that, usually at least, this state would have the greatest interest in the issue of contribution and that its local law should be applied." § 173, Comment a. A similar rule applies to actions for indemnity based on tort. Ibid., Comment b. Accordingly, on such issues New Hampshire law will govern since the interested parties are domiciled there and the relationship between them apparently existed there. Regarding any contracts of indemnity between Nash-Tamposi and Whitcomb, New Hampshire law will apply unless the contract contained a different reasonable choice of law provision.

### Breach of Contract

In addition to her separate causes of action against each of the three defendants for wrongful death, plaintiff Schulhof brings suit against Nash-Tamposi (cause of action 3) and against Whitcomb (cause of action 5) for breach of a contract of carriage. Plaintiff's theory is that her decedent contracted with the defendants to carry him safely from Concord, New Hampshire to White Plains, New York, that defendants breached their contract and their duties as a common carrier of passengers for hire, and that the breach proximately caused decedent's death.

Plaintiff Schulhof makes the following allegations which are relevant to her actions for breach of a contract for carriage; plaintiff Schulhof's decedent contracted with Whitcomb for round trip passage from White Plains, New York to Concord, New Hampshire; Whitcomb transported Schulhof to New Hampshire; Whitcomb then left its aircraft in New Hampshire for repairs; Whitcomb subcontracted with Nash-Tamposi for carriage of Schulhof back to White Plains; Schulhof thus left New Hampshire aboard the Nash-Tamposi Navajo Chieftain; plaintiff alleges that an employee of Nash-Tamposi and an employee of

Whitcomb piloted the plane;[7] the aircraft crashed causing Schulhof's death. Plaintiff Schulhof thus alleges in her third cause of action that decedent Schulhof or his agent, which presumably was Whitcomb, contracted with Nash-Tamposi for safe carriage from Concord, New Hampshire to White Plains, New York. In her fifth cause of action, plaintiff alleges that Schulhof contracted with Whitcomb for safe transport from Concord to White Plains and that Whitcomb, without Schulhof's knowledge, contracted with Nash-Tamposi.

Defendants Nash-Tamposi and Whitcomb contended, at oral argument on May 21, 1982, that New Hampshire law should govern contract issues. Whitcomb argued that Massachusetts courts would apply New Hampshire law under the most significant relationship approach of Restatement (Second) of Conflict of Laws. Nash-Tamposi argued that Massachusetts had no contacts with the contract. Although Nash-Tamposi conceded that New York had some interest, it appeared, at oral argument, though not in its brief, to argue that New Hampshire had the greater relationship. Plaintiff Schulhof disagreed. She contended that the claim for breach of contract essentially sounded in tort and that the law governing the principle tort issues (Massachusetts) should govern the breach of carriage claims, too.

Traditionally, Massachusetts courts have applied the law of the place where the contract was made to material contract issues. *Cameron v. Gunstock Acres, Inc.,* Mass.1976, 370 Mass. 378, 381–82, 348 N.E.2d 791; *Dicker v. Klein,* Mass.1972, 360 Mass. 735, 736, 277 N.E.2d 514. The Supreme Judicial Court has implied that it will no longer follow a single factor approach but has not had occasion to articulate its new rule. *Choate, Hall & Stewart v. SCA Services, Inc.,* 1979, 378 Mass. 535, 392 N.E.2d 1045. Its decisions suggest that it will, however, adopt the approach of the Restatement (Second) of Conflict of Laws,

§§ 186 et seq., *Ibid.; Kearsarge Metallurgical Corp. v. Peerless Insurance Co.,* 1981, —— Mass. ——, —— n. 7, 418 N.E.2d 580. See also *McKinney v. National Dairy Council,* D.Mass.1980, 491 F.Supp. 1108, 1112 (Keeton, J.) ("This court predicts that when squarely confronted with the issue the Supreme Judicial Court will in fact adopt 'a more functional approach' to choice of law in the contracts context.")

The Restatement (Second) provides that, absent an effective choice of law by the parties, presumably the situation in the instant case, contractual validity and rights in contracts of transportation are governed by the local law of the state of departure unless another state has a more significant relationship with an issue under the principles stated in § 6. Restatement (Second) of Conflict of Laws, § 197. The initial step, then, is to identify the place of departure. The Restatement (Second) states that "[i]n the case of a round-trip ticket, the place of departure is the place from which the passenger departs initially." Restatement (Second) of Conflict of Laws § 197, comment a. Under that rule, New York would be the place of departure, since Schulhof's initial trip was from New York to New Hampshire. We conclude, however, that for choice of law purposes in this case New Hampshire should be treated as the place of departure. Nash-Tamposi and Whitcomb both urged application of New Hampshire law at the hearing on May 21, 1982. Plaintiff Schulhof, in her complaint, twice referred to the contract as one "to transport [Schulhof] safely from Concord, New Hampshire, to White Plains, New York," suggesting that she too viewed the return trip as a separate departure. Accordingly, we conclude that New Hampshire was the place of departure. The parties have not suggested any contract issue on which any other state has a more significant relationship to the contract issues than does New Hampshire.

---

**7.** Specifically, plaintiffs allege that Nash-Tamposi's employee, Sidney Clarkson, was pilot-in-command, and that Whitcomb's employee, Kevin Hawkes, was co-pilot. Nash-Tamposi alleges that Hawkes was the pilot and Clarkson was a passenger; Whitcomb contends that Clarkson commanded the plan and that Hawkes was a passenger.

We note that of the three parties involved in this issue (Nash-Tamposi, Whitcomb and Schulhof), two were New Hampshire entities and one (Schulhof) was a domiciliary of New York. The contract was performed primarily in New Hampshire and briefly in Massachusetts. The contract, if there was one, between Nash-Tamposi and Whitcomb was apparently negotiated and formed in New Hampshire. See Restatement (Second) of Conflict of Laws, § 188(2). Accordingly, we conclude that the parties would expect New Hampshire law to govern. Application of New Hampshire law contributes to choice-of-law values of certainty, predictability and uniformity and is easily ascertained. Moreover, since the contract for transportation was performed primarily in New Hampshire, that state's interest is clear. Ibid. § 197, comment b.

It may seem anomalous for a different law to govern the breach of contract counts than that which governs the claims sounding in tort especially since, as plaintiff pointed out, the acts constituting tortious conduct would also be the acts which breached the contract. We believe that any anomaly is more apparent than real. Although tort and contract overlap as substantive bodies of law, see G. Gilmore, *The Death of Contract*, they seek to serve different purposes, and in so doing, implicate the interests of various jurisdictions in different manners. Contract essentially involves bi-polar relations in which parties who engage in face-to-face encounters owe each other duties of performance. Contract damages are designed to put the wronged party in the position he was in before the contract or to allow him to achieve the position he would have realized had the breaching party performed as promised. See generally, Fuller and Perdue, The Reliance Interest in Contract Damages, 1936, 36 Yale L.J. 52.

Tort differs from contract in two respects which are significant to choice-of-law analysis. First, tort attempts to regulate conduct between strangers as well as between those engaged in voluntary bi-polar transactions. It imposes duties independent of agreement which extend to all within a foreseeable zone of risk. Second, tort contains a stronger deterrent purpose than does contract. Not only does tort law seek to erase loss but it also induces individuals to behave in a manner less likely to cause harm.

These differences justify applying the law of different jurisdictions to claims sounding in tort and contract. The tort counts implicate the interest Massachusetts has in deterring conduct which might cause harm to anyone within its borders. Although New York has a greater interest in compensating its domiciliaries, the strong interest in deterrence of the place of the accident justifies applying its local law. In a contract context, however, Massachusetts has no interest of comparable strength. The only duties and rights a contract creates run to and from its parties, none of which are primarily related to Massachusetts. Moreover, parties to a transportation contract have reason to believe that their contract will be regulated by the law of the place of departure. Those who commit, or are victims of, torts have no such justified expectation. When the deterrent purpose of tort is largely removed, as it is in contract actions, and when different relevant expectations of the parties are introduced, the relative interests of different jurisdictions change. Thus, it is not surprising that New Hampshire law would generally govern contract issues while Massachusetts law would generally govern the tort issues. We reiterate the qualification of our contract analysis that, as the parties raise specific contract issues, it may develop that some law other than New Hampshire law would govern some issues. Moreover, it should be noted that federal law may preempt state law in certain respects. See 49 U.S.C. §§ 1301–1542.[8]

---

**8.** While the orders contained in this memorandum reflect the court's present opinions on the issues discussed, they are, of course, subject to change. In particular, should the Supreme Judicial Court of the Court of Appeals for the First Circuit, prior to the time the court in-

*Procedural Order*

At the hearing on June 24, 1982, the court, at the suggestion of the parties, deferred decision on the question of prejudgment interest until at least 30 days after the issuance of this memorandum. It did so in order to allow the parties to brief questions regarding the Massachusetts rate of prejudgment interest, including some which first arose at the hearing. The availability of prejudgment interest in this case is a substantive matter to be determined by state law, *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 7 Cir. 1981, 644 F.2d 633, 637, particularly the substantive state law governing damage issues, *Sylvania Electric Products, Inc. v. Barker*, 1 Cir. 1955, 228 F.2d 842, *cert. denied* 1956, 350 U.S. 988, 76 S.Ct. 475, 100 L.Ed. 854; Restatement (Second) of Conflict of Laws, § 171, comment c; § 207, comment e; *Morris v. Watsco, Inc.*, 1982, 385 Mass. 672, 678, 433 N.E.2d 886 (dicta). Since Massachusetts law governs tort damage issues, Massachusetts law would also govern the awarding of prejudgment interest for the tort claims.

It is not, however, clear what law would govern the awarding of prejudgment interest for the two contract claims in the *Schulhof* case. The Supreme Judicial Court suggested recently that where the parties have not made a choice of law themselves as part of their contract, "the better rule may be in all instances to turn to the law governing rights and duties under the contract to determine the interest payable for breach of contract. See Restatement (Second) of Conflict of Laws, §§ 188 and 207, Comment e (1971)." *Morris v. Watsco, supra* 385 Mass. at 678, 433 N.E.2d 886. That rule would suggest applying New Hampshire law, viz., N.H.Rev.Stat.Ann. § 524:1–b (1974). See *Brook Village North Associates*

*v. General Electric Co.*, 1 Cir. 1982, 686 F.2d 66 at 75–76 (1st Cir. 1982). We note, however, that § 207 states that the measure of recovery, including prejudgment interest, "is determined by the local law of the state selected by application of the rules of §§ 187–188." [9] Moreover, Comment c to § 207 states that protecting the justified expectations of the parties "has little role to play with respect to the measure of damages." Here, however, we have relied on § 197, which applies to contracts of transportation, not on §§ 187 and 188, to conclude that New Hampshire law governs contract issues. That section considers the expectations of the parties an important factor in determining what law governs the validity of, and rights under, transportation contracts. Thus, it is not clear whether the law governing prejudgment interest automatically would follow that governing substantive issues under *Morris v. Watsco, Inc., supra* 385 Mass. at 678, 433 N.E.2d 886, or whether it would be chosen pursuant to § 188 rather than § 197 and, if so, whether some law other than New Hampshire would govern.

Accordingly, in their briefs on the proper measure of prejudgment interest and the period for which it is recoverable for wrongful death claims under Massachusetts law,[10] the parties shall also discuss the issues raised above regarding the law governing prejudgment interest in the Schulhof contract claims. Parties shall file these briefs by September 27, 1982.

---

structs the jury or makes other relevant rulings, issue an opinion indicating that our understanding of Massachusetts conflicts law is incorrect, we would, of course, make appropriate modifications in these orders.

**9.** Section 187 discusses the approach when the parties have made a choice-of-law; section 188 applies when they have not done so.

**10.** Parties shall consider the effect, if any, of 1982 Mass. Regular Session Chapter 183 "Civil Actions-Interest" which is reprinted in West's Massachusetts Legislative Service 1982 at pages 367–368.