680 F.2d 727
 BANCO NACIONAL DE LA VIVIENDA, a Guatemalan Bank, Plaintiff-Appellant,
v.
Saul J. COOPER, Antonio Anaya, Antonio Kusmich, Guatemala
Development Corp., Arab International Bank and
Trust Co., Ltd. and L.A.L. Enterprises,
Inc., Defendants-Appellees.
 No. 81-5009.
 United States Court of Appeals,
Eleventh Circuit.
 July 16, 1982.
 
 Mallory H. Horton, George L. Combaluzier, Miami, Fla., for plaintiff-appellant.
 Saul J. Cooper, Miami, Fla., pro se and for Arab Intern. Bank & Trust Co., Ltd.
 Appeal from the United States District Court for the Southern District of Florida.
 Before VANCE, JOHNSON and HENDERSON, Circuit Judges.
 JOHNSON, Circuit Judge:
 
 
 1
 Banco Nacional de la Vivienda ("Banco Nacional"), plaintiff in this Florida diversity action, appeals from the district court's entry of judgment in favor of defendant Saul Cooper. Banco Nacional contends that the evidence at trial overwhelmingly supported its claim that Cooper engaged in fraud by depositing and drawing funds against two $50,000 checks issued by a nonoperating bank, Arab International Bank and Trust Co., Ltd. ("Arab International"). Banco Nacional further contends that the district court incorrectly applied the Florida law of fraud in charging the jury and ruling on plaintiff's motions for directed verdict and judgment notwithstanding the verdict. Because an intervening decision of the Florida Supreme Court rendered the district court's view of the law inaccurate, we reverse the judgment of the court and remand for a new trial.
 
 
 2
 In May 1977 Cooper, a Miami lawyer, hired Kenneth Allen, a barrister in Montserrat, British West Indies, to form Arab International as a British West Indies banking corporation. Allen incorporated Arab International, obtained a telex machine and telephone for "the entity" and put a sign on his law office door indicating that his office was also the office of Arab International. Allen testified, however, that to his knowledge Arab International never operated as a bank. Arab International did not hold funds nor did it have an account in any Montserrat bank; Cooper never contacted Allen about the operation of the bank; and no one ever came to Montserrat to do business on behalf of Arab International. At one point Cooper sent to Montserrat an employee who paid the telephone and telex charges and took the Arab International sign back to Miami.
 
 
 3
 Through a resolution of July 20, 1977, Cooper became senior vice president, secretary, and a director of Arab International. Cooper also acquired full power of attorney to conduct its banking matters, including opening and operating Arab International accounts. Cooper testified that he leased office space within his own Miami law office to AIB, Inc., the American holding company of Arab International. Cooper installed a telex machine in this portion of his office in the name of Arab International. At the same time La Casa Pergamino, a Miami printing firm, printed several orders for checks and stationery for Arab International. The order forms listed Cooper's law office telephone number on them, the orders were picked up by a man bearing the same name as Cooper's law clerk at the time, and at least one of the orders was paid for with a check drawn on the account of "Saul Cooper Attorney at Law." Cooper, however, denied having anything to do with obtaining Arab International's checks and stationery.
 
 
 4
 On August 19, 1977, Cooper arrived at Banco Nacional in Guatemala City, Guatemala, and opened two checking accounts. Cooper opened the first account in the name of Arab International. He gave Alexy de Synegub, president of Banco Nacional, a letter of introduction from Arab International offering to establish a "corresponding banking relationship." Cooper then deposited a $50,000 cashier's check drawn on Arab International. Cooper opened the second account in the name of the Guatemalan Development Corporation. Cooper offered two letters for the second account. One merely stated that Arab International had authorized a $50,000 cashier's check for Guatemalan Development Corporation. The other stated that: "We hereby confirm our irrevocable and unconditional guarantee to re-pay upon first presentation with no protest any and all promissory notes, instruments, etc. (of Guatemala Development Corp.) ... up to and including the sum ... of U.S. $100,000 ...." Cooper and an associate, Antonio Anaya, were joint signatories to that account.
 
 
 5
 Between August 21 and 23 Cooper and Anaya jointly signed five checks on the Guatemalan Development account totalling $24,100. Banco Nacional honored the checks even though it had not received funds from Arab International. The record reveals that at least $10,000 of that amount went directly to Cooper in the form of cashed traveler's checks.
 
 
 6
 In response to inquiries, Banco Nacional received cables from Arab International on September 1 and 2, originating from the telex machine Cooper had installed for Arab International in his Miami office. The cables assured Banco Nacional that Arab International had issued both cashier's checks and that it would make payment upon presentation. On September 20 Banco received another telex to the same effect. On October 5 Banco received a telex directly from Cooper stating that he had been advised that payment had been made on September 29. Arab International, however, never paid either cashier's check, nor did it reimburse Banco Nacional for the $24,100 in checks drawn by Cooper and Anaya.
 
 
 7
 Several months after returning to Miami, Cooper presented to Miami banks two Arab International checks in the amount of $2,500 and $45,000. Cooper testified that the checks were made payable to him in return for legal work. Neither of these checks cleared the collection process.
 
 
 8
 There is no evidence in the record that Arab International ever operated as a going bank. Although Arab International continuously listed Kenneth Allen's office in Montserrat as its address, it never functioned in Montserrat as a business or banking entity. None of the testifying parties who sought to collect funds from Arab International has ever located the bank. Cooper, who for the relevant period of this lawsuit was an officer and director of Arab International, did not produce any evidence of Arab International's actual operation.
 
 
 9
 At trial the plaintiff argued that it relied on Cooper's overt and implied representations as to the soundness of Arab International and the validity of the checks. Banco Nacional contended that Cooper's representations, his presentation of the checks and the letters, and his continued involvement with Arab International evidenced a scheme to defraud the plaintiff. Cooper denied any wrongdoing, implying that he was an innocent agent of the bank. Cooper also argued that any losses were the result of Banco Nacional's own negligence. The jury found for the defendant on a general verdict. After trial Banco Nacional moved for judgment notwithstanding the verdict, which the judge denied with the following relevant statement:
 
 
 10
 Based on the evidence presented at trial, the Court concludes that the jury could reasonably have determined that Plaintiff's reliance on Saul Cooper's alleged misrepresentations was not justifiable under the circumstances and/or that it could have uncovered the fraud "by making a reasonable inquiry or investigation." It is therefore improper for this Court to grant the relief Plaintiff requests ...
 
 
 11
 (R. at 586.) Banco Nacional brought this appeal.
 
 
 12
 Under Florida law the plaintiff in a fraud action must prove (1) that the defendant falsely represented a specific material fact; (2) that the defendant knew, or should have known, that the representation was false, or that defendant made the representation without knowledge of its truth or falsity; (3) that the defendant intended to induce the plaintiff to act on the representation; and (4) that the plaintiff was injured while acting in reliance on the representation. Amazon v. Davidson, 390 So.2d 383, 385 (Fla.App.1980); Osborne v. Delta Maintenance & Welding, Inc., 365 So.2d 425, 427 (Fla.App.1978); Charter Air Center, Inc. v. Miller, 348 So.2d 614, 616 (Fla.App.1977); First Nat'l Bank v. Jackson, 267 So.2d 697, 699 (Fla.App.1972); Nantell v. Lim-Wick Const. Co., 228 So.2d 634, 637 (Fla.App.1969); see Bissett v. Ply-Gem Indus., Inc., 533 F.2d 142, 146 (5th Cir. 1976).
 
 
 13
 Within a month after the trial of this case the Florida Supreme Court modified the standard governing a plaintiff's reliance on a representation which plaintiff could have ascertained was false had he made an investigation. In Besett v. Basnett, 389 So.2d 995, 997-98 (Fla.1980), the court held that a plaintiff who reasonably relies on a false representation is not under a duty to investigate its truth or falsity. Adopting the principle of law expressed in Sections 540 and 541 of the Restatement (Second) of Torts (1976), the court stated: "We hold that a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him."[1] As the court explained:
 
 
 14
 A person guilty of fraud should not be permitted to use the law as his shield. Nor should the law encourage negligence. However, when the choice is between the two-fraud and negligence-negligence is less objectionable than fraud. Though one should not be inattentive to one's business affairs, the law should not permit an inattentive person to suffer loss at the hands of a misrepresenter.
 
 
 15
 389 So.2d at 998.
 
 
 16
 Applying the Erie doctrine,[2] this Court recognizes and follows intervening state court decisions which alter applicable state law. Maxey v. Freightliner Corp., 665 F.2d 1367, 1369, 1374 (5th Cir. 1982) (en banc).[3] Besett, therefore, governs this case. Reviewing the record, we conclude that the district court erroneously instructed the jury that if "the plaintiff could have ascertained the truth of the matter by making a reasonable inquiry or investigation under the circumstances presented but failed to do so, then it cannot be said that it justifiably relied upon such misrepresentations." (Tr. at 368.) The record also reveals that Banco Nacional's alleged negligent reliance on Cooper's representations was a major issue in the case.
 
 
 17
 Accordingly, because of the intervening decision of the Florida Supreme Court governing an essential issue before the jury, this Court will remand the case for a new trial. See Maxey v. Freightliner Corp., supra.
 
 
 18
 REVERSED and REMANDED.
 
 
 
 [1]
 The Florida Supreme Court fully quoted Sections 540 and 541 as well as the accompanying comment
 
 
 [2]
 Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)
 
 
 [3]
 The Eleventh Circuit Court of Appeals has adopted the case law of the former Fifth Circuit as its governing body of precedent. This precedent is binding unless and until overruled or modified by this Court en banc. Bonner v. City of Prichard, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (en banc)