**Carmen Felicita ARRIETA–GIMENEZ, etc., et al., Plaintiffs, Appellants,**

v.

**Alberto ARRIETA–NEGRON, et al., Defendants, Appellees.**

No. 88–1085.

United States Court of Appeals, First Circuit.

Heard July 29, 1988.

Decided Oct. 18, 1988.

Ivan Diaz de Aldrey, San Juan, P.R. for plaintiff, appellant Conjugal Partnership,

and Blas C. Herrero, Jr., Hato Rey, P.R. for plaintiff, appellant Carmen Felicita Arrieta–Gimenez.

Earl D. Waldin, Jr., Miami, Fla., (Florida issues), and Stanley L. Feldstein, Old San Juan, P.R. (Puerto Rico issues), with whom Kelley Drye & Warren, Smathers & Thompson, Miami, Fla., Stanley L. Feldstein, Edward A. Godoy and Feldstein, Gelpi, Hernandez & Gotay, Old San Juan, P.R., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, TORRUELLA and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

The resolution of this case depends on the answer to two questions of Florida law on which we have been unable to find controlling precedent from the courts of Florida. These questions concern 1) the constitutionality under the "access to the courts" provision of the Florida constitution of Fla. Stat. § 95.031(2) (1987) as applied to fraud; and 2) the res judicata effect of a consent judgment which is attacked more than one year later on the ground of fraud. Accordingly, we certify two questions to the Supreme Court of Florida. In the present opinion, which will accompany our certification, we detail those aspects of the case that we have been able to resolve, and we discuss the two questions that we are certifying.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The case from which this appeal is taken was brought in 1983 in the United States District Court for the District of Puerto Rico by the plaintiff, Carmen Arrieta Gimenez,[1] against her four half-siblings, Alberto Arrieta Negron, et al. Plaintiff is the daughter of the late Rafael Arrieta Rios (Mr. Arrieta) and his second wife; defendants are the children of Mr. Arrieta and his first wife. In 1960, plaintiff and defendants entered into a contract in Dade County, Florida, in settlement of a dispute over the division of their late father's estate. Plaintiff thereafter sued defendants in the present diversity action to set aside that contract on the ground of fraud. The district court awarded summary judgment to defendants, for the reasons outlined below. 672 F.Supp. 46.

According to the complaint, Mr. Arrieta provided in his will that his estate—aside from a legacy to his widow—should go in equal shares to his five children, plaintiff and defendants. At the time of his death in 1958, Mr. Arrieta owned extensive properties in Florida and Puerto Rico. Plaintiff had been living in Florida with her mother since her childhood. For several years, one or more of the defendants had been managing certain of their father's properties in Florida and Puerto Rico. Plaintiff claims that in the course of settling their dispute over their father's estate, her half-brother Alberto Arrieta Negron represented to her that almost all of their father's properties were located in Florida, and that their father's sugar mill in Puerto Rico had only "scrap value." He did not disclose the existence of any other property in Puerto Rico. On July 27, 1960, as a result of these representations, plaintiff signed a settlement agreement that provided that defendants would pay her $175,000 for her share of their father's property in Florida, and that defendants would pay the balance of a mortgage on property owned by plaintiff in Puerto Rico (amounting to about $18,000) in exchange for her share of her father's properties in Puerto Rico. This settlement agreement was embodied in a consent judgment entered in the County Judges' Court of Dade County, Florida. Within the next two years, plaintiff was paid all that was due her under the agreement.

On July 19, 1983, according to the complaint, plaintiff discovered in the property registry of Bayamon, Puerto Rico, a declaration of trust that had been presented by defendants for recording in 1981. From this declaration of trust plaintiff learned for the first time of a trust established by

---

1. An additional plaintiff is the Conjugal Partnership comprised of Arrieta Gimenez and her husband Orlando Vizcarrondo Narvaez. For convenience, we will refer only to plaintiff Arrieta Gimenez.

her father encompassing over 2,000 acres of land in Puerto Rico. Plaintiff now claims a one-fifth share in this trust. Plaintiff's discovery prompted her to undertake an investigation, as a result of which she learned that her father had many real estate holdings in Puerto Rico besides those mentioned in the declaration of trust. She also discovered that in 1963 defendants had sold the machinery from the sugar mill for more than $2 million. Plaintiff asserts that the true value of her father's estate was much greater than what she had been led to believe. She claims that her share of her father's estate was worth more than $5 million, and that she was defrauded by her half-siblings into forfeiting her inheritance for a small fraction of its value.

Defendants moved for summary judgment and, after consideration of discovery materials and affidavits, the district court granted the motion. The district court held that the case was governed by the law of Florida, including Florida's statutes of limitations. It ruled that even taking all of plaintiff's allegations of fraud and concealment to be true, plaintiff's suit was barred by Fla.Stat. § 95.031(2), which provides that fraud actions "must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered." We will refer to this statute, which bars a cause of action even before a fraud is discovered or discoverable, as a "statute of repose." Because plaintiff did not file suit until 1983, more than 20 years after the allegedly fraudulent agreement, her suit could not be maintained. The district court noted that the constitutionality of the statute of repose had been questioned, but it did not discuss the constitutional issues. Because the district court found the statute of repose to be dispositive, it did not find it necessary to consider defendants' additional claim that the court order approving the settlement agreement had the effect of precluding any further actions.

The district court also held that the alleged fraud had been discoverable by plaintiff within the 12-year period of the statute of repose. According to the court, "When

the plaintiff signed the Agreement she was already a college graduate; twelve years later she was certainly mature enough, and had been for some time, to investigate any wrongs that may have been committed by her brothers and sisters."

## II. WHICH STATE'S LAW GOVERNS?

■ We agree with the district court that Florida law, including the relevant Florida statutes of limitations and repose, governs this case. Federal courts must apply the substantive law of the state in which they sit, including state choice of law provisions. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Advance Financial Corp. v. Isla Rica Sales, Inc.*, 747 F.2d 21, 28 (1st Cir.1984). Accordingly, we must look to Puerto Rico choice of law standards. Under these standards, the substantive law of Florida is applicable to this case. Puerto Rico has adopted the doctrine of dominant contacts for determining which state's law to apply. *See Green Giant Co. v. Superior Court*, 104 D.P.R. 682 (1975). In the case at hand, the "dominant contacts" are with the state of Florida. As the district court noted, between 1958 and 1962 plaintiff and at least one of the defendants resided in Florida; the settlement agreement was signed in Florida and approved by the Dade County Judges' Court; and all of the parties retained Florida lawyers. We accept the district court's conclusion that "the parties had reason to expect Florida law to govern their transaction, that Florida retains an interest in regulating the conduct of those making agreements in that state, and that no purpose of the Commonwealth of Puerto Rico is served by applying Puerto Rican law to the transaction."

■ Although the parties agree that Florida substantive law governs this case, they differ as to the applicability of the Florida statute of limitations if the Florida statute of repose is unconstitutional. Defendants accept the district court's conclusion that section 95.031(2)—the 12-year statute of repose—should be applied to this

case. But they argue that if this statute should be found to be unconstitutional, then the Puerto Rico statute of limitations should apply. Defendants' rationale for this argument is that a statute of repose, such as section 95.031(2), which has the effect of precluding a right of action before it accrues, is part of the controlling substantive law. But they view an ordinary statute of limitations—one that goes into effect after the cause of action accrues—as procedural, rather than substantive. Defendants contend that in this procedural domain, the Commonwealth courts of Puerto Rico would apply *Puerto Rico* statutes of limitations—and so, they reason, should a United States district court sitting in Puerto Rico.

We are not persuaded by this analysis. First, we observe that defendants presented this argument—that, were the Florida statute of repose to be invalidated, the Puerto Rico statute of limitations would apply—for the first time in their brief to us. They did not place it before the district court in their motion for summary judgment. Accordingly, we view the argument as having been waived. *See Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir.1979) (a legal theory not presented to the district court cannot ordinarily be raised for the first time on appeal). Even if the argument had not been waived, we are by no means persuaded that if the Florida statute of repose were found to be unconstitutional, Puerto Rico courts would then turn to Puerto Rico statutes of limitations. Defendants do not cite any Puerto Rico choice of law cases that support their argument. In the absence of any directly supporting precedent, we think it at least as likely that, under these circumstances, Puerto Rico courts would apply Florida's four-year statute of limitations for fraud, Fla.Stat. § 95.11(3)(j) (1987). Indeed, there is some precedent under the civil law of Puerto Rico for viewing matters similar to these as substantive, rather than procedural, suggesting, although we do not decide, that Puerto Rico courts would borrow the statutes of limitations of the state whose substantive law governs—in this case, Florida. *See Febo Ortega v. Superior Court,*

102 D.P.R. 506, 509 (1974) ("the limitation of actions is not a procedural, but a substantive matter"); *Olmo v. Young & Rubicam of Puerto Rico, Inc.*, 110 D.P.R. 965, 969 (1981). We hold that if the Florida statute of repose is unconstitutional, the relevant statute of limitations of Florida, not Puerto Rico, applies.

## III. THE DISCOVERABILITY OF THE FRAUD

If the Florida statute of repose were held to be unconstitutional as applied to this case, the case would be governed by Florida's "ordinary" four-year statute of limitations for fraud. Fla.Stat. § 95.11(3)(j). As explained in Fla.Stat. § 95.031(2), this four-year period "run[s] from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Plaintiff alleged that she first discovered the fraud on or after July 19, 1983, when she came upon the certificate of trust in the Bayamon property registry, and that she had no reasonable way of discovering the fraud before that time. She filed suit within three months of her discovery. Thus, if we adopt plaintiff's view that the fraud was neither discovered nor discoverable before July 1983, her suit would not be time-barred under the four-year statute of limitations.

As noted above, the district court found that the alleged fraud was discoverable within the 12 years following execution of the 1960 settlement agreement between plaintiff and defendants. The district court erred, however, in making such a finding in this summary judgment proceeding. When determining a motion for summary judgment, a district court must make all factual inferences in favor of the party opposing the motion, and may not resolve controverted factual questions. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103 (1st Cir.1988). On the present record, the discoverability of the fraud is a controverted question of fact.

It may be true, as the district court observed, that at the time of the settlement in 1960, plaintiff, who had recently graduated

from college, was "mature enough ... to investigate any wrongs." But the mere fact that plaintiff was mature and had time to have inquired would not, by itself, overcome the effect of a fraudulent inducement, assuming there was one. Florida law does not impose upon the victim of a fraudulent representation the duty to investigate the truth or falsity of that representation. Indeed, the Supreme Court of Florida has gone so far as to state that when the choice is between a perpetrator of a fraud and a negligent victim, the law must protect the victim:

> A person guilty of fraud should not be permitted to use the law as his shield. Nor should the law encourage negligence. However, when the choice is between the two—fraud and negligence— negligence is less objectionable than fraud. Though one should not be inattentive to one's business affairs, the law should not permit an inattentive person to suffer loss at the hands of a misrepresenter.

*Besett v. Basnett,* 389 So.2d 995, 998 (Fla. 1980). *See also Banco Nacional de la Vivienda v. Cooper,* 680 F.2d 727, 730 (11th Cir.1982) (applying *Besett*'s holding that a plaintiff who reasonably relies on a false representation is under no duty to investigate its truth or falsity).

In the circumstances, therefore, we cannot accept the district court's determination on summary judgment that the alleged fraud was discoverable before 1983. Not only does discoverability present here a genuine issue of material fact, but the record as so far developed affords little tangible support for the proposition that plaintiff was obliged to have initiated an investigation during the 12–year period following the 1960 settlement.

## IV. THE CONSTITUTIONALITY OF THE FLORIDA STATUTE OF REPOSE

■ Under section 95.031(2), the statute of repose, plaintiff's suit is time-barred whether or not it was discoverable before 1983. Until its amendment in 1986, the statute provided that

> Actions for products liability and fraud under subsection 95.11(3) must be begun ... within 12 years after the date of delivery of the completed product to its original purchaser or within 12 years after the date of the commission of the alleged fraud, regardless of the date the defect in the product or the fraud was or should have been discovered.

In 1986 the Florida legislature amended section 95.031 to eliminate its reference to product liability cases. But the statute of repose remains on the books for fraud cases. If this statute were held to be constitutional under the Florida constitution, as applied to this case, plaintiff's suit would be barred and the case would be over.[2]

Our reading of Florida cases suggests, however, that the constitutionality under Florida's constitution of section 95.031(2) in the context of fraud remains an unsettled question. Article 1, Section 21, of the Florida Constitution guarantees access to the courts ("The courts shall be open to every person for redress of any injury"). The Supreme Court of Florida has generally interpreted this provision to mean that a statute cannot take away a statutory or

---

**2.** Plaintiff argues that section 95.031(2) is unconstitutional not only under the Florida state constitution but also under the Fourteenth Amendment of the United States Constitution, because its enactment deprived plaintiff of a vested property right—the right to sue defendants—without due process of law or just compensation. But we can find no support for this proposition. In fact, when the Florida legislature enacted section 95.031 in 1974, establishing the 12–year statute of repose, it provided for a one-year "window" for suits to be brought; thus, any hypothesized right to sue was not absolutely extinguished. Beyond this, the United States Supreme Court, in cases challenging the constitutionality of similar statutes of repose, has found no violation of the Fourteenth Amendment. *See Eddings v. Volkswagenwerk, A.G.,* 835 F.2d 1369, 1373 (11th Cir.1988) (upholding the constitutionality of section 95.031(2) under the Fourteenth Amendment, and citing relevant Supreme Court cases). *See also Hammond v. United States,* 786 F.2d 8, 12 (1st Cir.1986) (reviewing Supreme Court precedent and concluding that "rights in tort do not vest until there is a final, unreviewable judgment"). Following *Eddings,* we hold that section 95.031(2) does not violate the Fourteenth Amendment.

common law cause of action before it accrues without providing a reasonable alternative, unless there is "both ... an overpowering public necessity and an absence of any less onerous alternative means of meeting that need." *Overland Construction Co. v. Sirmons*, 369 So.2d 572, 573 (Fla.1979) (citing the court's "polestar decision" in *Kluger v. White*, 281 So.2d 1, 4 (Fla.1973)).

Until its recent amendment, section 95.031(2) applied to both product liability and fraud cases. The Supreme Court of Florida has apparently addressed the constitutionality of the statute of repose only in the context of product liability cases. In *Battilla v. Allis Chalmers Manufacturing Co.*, 392 So.2d 874 (Fla.1980), the court held that where section 95.031(2) barred a right of action before it ever existed, it was unconstitutional as applied because it denied access to the courts. In *Pullum v. Cincinnati, Inc.*, 476 So.2d 657 (Fla.1985), however, the court receded from *Battilla* and decided that—in the product liability domain—the statute of repose was constitutional. *See also Melendez v. Dreis & Krump Manufacturing Co.*, 515 So.2d 735 (Fla.1987) (applying *Pullum* ).

Defendants argue that *Pullum* means that section 95.031(2) is not unconstitutional as applied to this case. We cannot be certain, however, that the Supreme Court of Florida would follow *Pullum* in the domain of fraud. The question certified to the court in *Pullum* specified product liability cases, and the court's rationale focused on product liability: "The legislature, in enacting this statute of repose, reasonably decided that perpetual liability *places an undue burden on manufacturers....*" 476 So.2d at 659 (emphasis added). Indeed, there may be hints in *Pullum* that the court would find section 95.031(2) to be unconstitutional as applied to fraud. *Pullum* specifically distinguishes and preserves the holdings that statutes of repose were unconstitutional in both *Overland Construction*, 369 So.2d 572 (a construction defect case), and *Diamond v. E.R. Squibb & Sons, Inc.*, 397 So.2d 671 (Fla. 1981) (a special sort of product liability case).

The *Pullum* court's reference to *Diamond* is interesting in this regard. In *Diamond*, the plaintiff mother had ingested the drug diethylstilbestrol (DES) while she was pregnant with her daughter. The drug's effect as a cancer-causing agent in the plaintiff daughter did not become evident until the daughter reached puberty. The *Pullum* court noted,

> Under these circumstances, if the statute [of repose] applied, plaintiffs' claim would have been barred even though the injury caused by the product did not become evident until over twelve years after the product had been ingested. The legislature, no doubt, did not contemplate the application of this statute to the facts in *Diamond*. Were it applicable, there certainly would have been a denial of access to the courts.

476 So.2d at 659 n. *. An analogy can be drawn between the facts in *Diamond* and the allegation of fraud in the present case: in both instances, the initial injury (the ingestion of DES; the misrepresentation) took place *within* the 12–year period, but the effects of that injury did not become evident until after 12 years. This is different from the situation in *Pullum* and the other more typical product liability cases, *e.g.*, *Eddings v. Volkswagenwerk, A.G.*, 835 F.2d 1369 (11th Cir.1988), in which the initial injury—for example, an industrial or automobile accident—does not take place until after the 12–year period.

We have found only one Florida case that specifically addresses the constitutionality of section 95.031(2) as applied to fraud. In this case, the Florida District Court of Appeal declared, in dictum, that the application of the statute of repose to fraud discovered after 12 years is an unconstitutional bar of access to the courts. *Kempfer v. St. Johns River Water Management District*, 475 So.2d 920 (Fla. Dist.Ct.App.1985), *appeal dismissed and review denied*, 488 So.2d 68 (1986). This was a pre-*Pullum* case, and defendants argue that it is undercut by *Pullum*. But to the extent that *Pullum* may be limited to product liability, the logic of *Kempfer* is not necessarily undermined. We conclude,

therefore, that the constitutionality of section 95.031(2) as applied to fraud remains an unsettled question in Florida, and we certify this question to the Supreme Court of Florida.[3]

## V.  THE RES JUDICATA EFFECT OF THE FLORIDA CONSENT ORDER

■ In 1960, Judge Blanton of the County Judges' Court, Dade County, Florida, issued an order approving and confirming the settlement agreement between plaintiff and defendants.  Defendants now argue that this consent order has res judicata effect, thus precluding the present action.  Under 28 U.S.C. § 1738 (1982), the statutory complement of the full faith and credit clause of the United States Constitution, "judicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." To evaluate defendants' argument, therefore, we must determine whether Florida courts would themselves give preclusive effect to the consent order.[4]

So far as we can see, whether Florida courts would give preclusive effect to the consent order is another unsettled question of Florida law.  The general rule in Florida is that after one year has gone by, judgments can be set aside only if they involve

"fraud on the court." *DeClaire v. Yohanan*, 453 So.2d 375 (Fla.1984).  In most instances, misrepresentation of the sort that is alleged in this case would not be considered "fraud on the court." But *DeClaire* seems to limit itself to cases in which the issues were before a court for resolution:

> When an issue is before a court for resolution, and the complaining party could have addressed the issue in the proceeding, such as attacking the false testimony or misrepresentation through cross examination and other evidence, then the improper conduct, even though it may be perjury, is intrinsic fraud and an attack on a final judgment based on such fraud must be made within one year of the entry of the judgment.

453 So.2d at 380.  This language could be taken to imply that in a case like this one—in which the issue (here, the values of the deceased father's properties) was *not* "before a court for resolution"—an attack on the judgment can be made even more than a year after judgment.

In a Florida District Court of Appeal case that predated *DeClaire*, the court held that a judicially approved property settlement agreement could be attacked in a subsequent action on the ground of fraud, even after the lapse of a year. *Brown v. Brown*, 432 So.2d 704 (Fla.Dist.Ct.App.

---

**3.** The unsettled state of the law is pointed up by the fact that Florida District Courts of Appeal in two different districts have recently issued conflicting decisions on the constitutionality of a similar statute of repose, section 95.11(4)(b) (1987), in the domain of medical malpractice. In *Phelan v. Hanft*, 471 So.2d 648 (Fla.Dist.Ct. App.1985), *appeal dismissed*, 488 So.2d 531 (Fla. 1986), the District Court of Appeal for the Third District held that the statute of repose could not constitutionally be applied in a malpractice action when it resulted in eliminating the plaintiff's right of action.  In *Carr v. Broward County*, 505 So.2d 568, 575 (Fla.Dist.Ct.App.1987), in contrast, the District Court of Appeal for the Fourth District held that section 95.11(4)(b) *was* constitutionally applied, because the legislature had "established an overriding public interest" when it enacted the Medical Malpractice Reform Act which contained the statute of repose. This reasoning was followed in *Shields v. Buchholz*, 515 So.2d 1379 (Fla.Dist.Ct.App.1987), *review dismissed*, 523 So.2d 578 (Fla.1988).

**4.** Plaintiff argues that defendants waived the argument that the Florida consent order precludes the present action, because they did not include it in their answer to plaintiff's amended complaint.  Defendants moved to amend their answer to include this affirmative defense of res judicata, and they argued it to the district court in their brief in support of their motion for summary judgment.  The district court never ruled on the motion to amend the answer.  In its opinion, the district court referred to the res judicata claim, but did not reach it because it found the Florida statute of repose to be dispositive.  The res judicata argument was squarely presented to the district court in defendants' motion for summary judgment, and plaintiff responded to it at that time.  Plaintiff does not seem to have been prejudiced by defendants' failure to include this claim in their answer. Accordingly, we hold that the res judicata claim has not been waived.

1983), *review dismissed,* 458 So.2d 271 (1984). In that case, Mrs. Brown alleged that Mr. Brown, her former husband, had fraudulently induced her to execute the settlement agreement, by knowingly overvaluing certain assets. These allegations seem analogous to those in the present case, in which plaintiff alleges that her half-brother knowingly *undervalued* certain of their father's assets. The *Brown* court held that this was an alleged extrinsic fraud that could be attacked even after one year. In *DeClaire,* the Supreme Court of Florida disapproved of the *Brown* decision "to the extent that it conflicts with our decision in the instant case." 453 So.2d at 381. But inasmuch as *DeClaire* restricted itself to litigated cases, it can be argued that *Brown* remains a viable Florida precedent with respect to consent judgments.

Although our concern here is with the law of Florida, we have surveyed the law of other jurisdictions for its possible persuasive effect. This examination has not been especially instructive. As a general matter, consent judgments are given the same res judicata effect as judgments in litigated cases. *See generally Modern Views of State Courts as to Whether Consent Judgment is Entitled to Res Judicata or Collateral Estoppel Effect,* 91 A.L.R.3d 1170 (1979). But this generalization applies to *valid* consent judgments, not necessarily to judgments that are held to be invalid on such grounds as fraud or mistake. Moreover, not all authorities hold to the general proposition that consent orders are entitled to the same preclusive effect as judgments in litigated cases. *See, e.g., Crowe v. Cherokee Wonderland, Inc.,* 379 F.2d 51, 54 (4th Cir.1967) ("The consent judgment ... was no more than a judicially approved contract. The mere fact that an agreement of the parties amending a lease is incorporated into a consent judgment does not render it sacrosanct or beyond attack").

At the most general level, although consent orders are indeed "judgments," they are not always treated in the same way as judgments in litigated cases. As the Supreme Court has written, in a somewhat different context,

> To be sure, consent decrees bear some of the earmarks of judgments entered after litigation. At the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees closely resemble contracts.... [C]onsent decrees 'have attributes both of contracts and of judicial decrees,' a dual character that has resulted in different treatment for different purposes.

*Local No. 93, International Association of Firefighters v. City of Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 3073, 92 L.Ed. 2d 405 (1986) (citations omitted). Whether the Supreme Court of Florida would view the consent judgment in this case any differently, for the purpose of determining its preclusive effect, from a judgment after litigation is a question that we have not been able to answer.

Accordingly, we are certifying the question of the res judicata effect of the consent judgment to the Supreme Court of Florida.

We recognize that if the statute of repose is found to be constitutional by the Florida court, that will terminate plaintiff's present action. Likewise, if the consent judgment has binding preclusive effect, plaintiff will not be able to proceed. We are respectfully advising the Florida court, therefore, that if the court answers either question in the foregoing manner, it should not feel obliged to answer the other.

## VI. PLAINTIFF'S OTHER ARGUMENTS ON APPEAL

We turn finally to plaintiff's remaining arguments, none of which we find persuasive.

First, plaintiff argues that defendants' fraud was a continuing one, extending at least until 1981, when the defendants' declaration of trust was presented in a public registry. Because the fraud was still being committed in 1981, plaintiff contends, it is from this date that the Florida statute of repose begins to run—and, therefore, her suit is not time-barred. We are not persuaded by this argument. All

frauds are "continuing" in the sense that the victim remains fooled until the fraud is discovered. But there is little reason to believe that the alleged fraud in this case was more "continuing" than any other. We hold, therefore, that the alleged fraud would have been committed—for purposes of applying the Florida statute of repose—in 1960, when the settlement agreement was signed.

■ Second, plaintiff argues that because of defendants' alleged breach of fiduciary duty, they are estopped from pleading the statute of limitations. Plaintiff cites no Florida cases in support of this proposition. Moreover, in its order of November 10, 1987, denying plaintiff's motion for reconsideration, the district court held that plaintiff's "attempt[s] to reargue this matter as if it involved a breach of duty by a fiduciary" would not be considered, because these arguments had not been presented in the original pleadings or in the papers concerning the summary judgment. We agree that the estoppel argument had not been presented to the district court. We hold, therefore, that this argument has been waived.

Third, plaintiff argues that she has a separate cause of action, based on the existence of a trust, which is not governed by the Florida statute of repose. We are not persuaded that any such separate cause of action lies outside the scope of section 95.031(2). In any event, we agree with the district court that this argument, too, has been waived because it was not squarely presented in the complaint or in plaintiff's response to defendants' motion for summary judgment. Indeed, plaintiff's attempts to recast her case as one involving a breach of trust, separate from the fraud cause of action, strike us as half-hearted. We place greater credence in the statement of plaintiff's counsel at oral argument before us, when he introduced the case as "a fraud action, fundamentally."

■ Fourth, plaintiff claims that the district court erred in refusing to grant plaintiff's request for a hearing on the motion for summary judgment, as well as on plaintiff's motions for reconsideration. This argument has little merit. The district court had extensive briefs from the parties and was well within its discretion when it decided the case without oral argument.

For the reasons stated, we are immediately certifying the two above-described questions to the Supreme Court of Florida. We shall retain appellate jurisdiction pending the response of the Florida court.

*So ordered.*

## CERTIFICATION

The resolution of this case depends upon questions of Florida law on which we are unable to find controlling precedent by the Supreme Court of Florida. Accordingly, we certify two questions to the Supreme Court of Florida, pursuant to Rule 9.150 of the Florida Rules of Appellate Procedure.

### Statement of Facts

As a statement of facts and background, the court attaches its interlocutory opinion.

### Questions of Law

The court respectfully asks for a resolution of the following questions:

1. Is Fla.Stat. § 95.031(2), the 12–year statute of repose, constitutional under the "access to the courts" or any other provision of the Florida constitution, when applied to a fraud that was not discovered or discoverable until more than 12 years after the date of its commission?

2. Would the Florida courts give res judicata effect to a consent judgment approving a property settlement, if it should be shown more than one year later that one party had fraudulently misrepresented to the other or concealed from the other party information that was material to the settlement?

An answer of "Yes" to either of these questions would have the effect of disposing of this case. If section 95.031(2) is constitutional as applied to this case *or* if the consent judgment has res judicata effect, then plaintiff's suit will be barred. Thus, while we certify both questions, if the Supreme Court of Florida answers

"Yes" to either of them, and is of the view that under Florida law such ruling terminates the controversy, we would not request that court to reach the other. Answers of "No" to *both* questions are necessary if the plaintiff is to be able to maintain her suit.

We wish to make clear that we would also welcome the advice of the Supreme Court of Florida on any other relevant question or aspect of Florida law on which the court believes that it is advisable to provide clarification.

The Clerk of this court will transmit these questions, along with our interlocutory opinion and copies of the briefs and appendix in this case, to the Supreme Court of Florida.