Linda Jean KING, individually and as Administratrix of the Estate of Jay Alan King, Katherine Eades, Michael King and Theresa King, by their mother and next friend Linda Jean King, Plaintiffs,

v.

WILLIAMS INDUSTRIES, INC., and Ethyl Corporation, Defendants.

Civ. A. No. 82–0026–F.

United States District Court,
D. Massachusetts.

March 30, 1983.

**322**

Richard M. Howland, Amherst, Mass., for plaintiffs.

Philip A. Brooks, H. Gregory Williams, Springfield, Mass., for Ethyl Corp.

Charles K. Bergin, Jr., Robinson, Donovan, Madden & Barry, Springfield, Mass., for Williams Industries.

## MEMORANDUM

FREEDMAN, District Judge.

This case is before the Court following a hearing on the motion of the defendant Williams Industries, Inc. ("Williams") to dismiss for failure to state a claim upon which relief can be granted. F.R.Civ.P. 12(b)(6).

### I.

This case presents a narrow choice of law issue in the context of a tragic set of facts. The decedent Jay Alan King was alive when this case was first filed in January 1982 but expired shortly thereafter survived by his widow Linda Jean King, his stepdaughter Katherine Eades, and his children Michael and Theresa King. The initial complaint alleged twelve counts: Counts I through III alleged claims by Jay Alan King for negligence, breach of warranty, and strict liability in tort against defendant Ethyl Corporation ("Ethyl") arising out of Ethyl's purported sale of Polyvinyl Chloride to King's former employer Williams; Count VIII averred that the negligence of Williams injured King; and Counts IV through VII against Ethyl and IX through XII against Williams set forth the individual claims of King's spouse, stepdaughter, and children for mental anguish and loss of consortium, companionship, and services resulting from each of the respective defendants' alleged injury of King. After King's

death, his Estate was substituted as party plaintiff and leave was granted to amend the complaint to set forth claims for wrongful death against Ethyl (Count XIII) and Williams (Count XIV).

Williams has moved for dismissal of all of the plaintiffs' claims against it. Williams contends that Massachusetts choice of law rules require that Indiana law govern the rights and liabilities of the parties in this action, and that properly applied, Indiana law bars plaintiffs' claims. Plaintiffs in opposing Williams' motion essentially concede that "Indiana law would normally govern under traditional conflicts of laws rules since the injury occurred in Indiana...." Plaintiffs' Memorandum in Opposition to Motion to Dismiss, at 5. However, plaintiffs argue that strict application of Indiana law to the facts of this case would violate established public policies of the forum state, and assert that a federal court sitting in diversity ought not apply a foreign state's law where to do so would be repugnant to the laws of the forum.

Before turning to discussion of the arguments advanced by the parties, the Court must first address issues raised by the procedural posture of this case and the factual bases upon which Williams' motion is predicated. Generally, a court reviewing a 12(b)(6) motion limits its inquiry, accepting as true all material allegations of the complaint, *O'Brien v. DiGrazia,* 544 F.2d 543, 545 (1st Cir.1975), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977), and determining whether the plaintiff is entitled to relief under any set of facts which could be proved in support of the claims alleged. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In the instant case, the allegations of the initial and amended complaints are sparse—albeit sufficient under the liberal requirements of notice pleading, F.R.Civ.P. 8(a). Williams in moving for dismissal relies on several facts not appearing on the face of the pleadings. On the one hand, its motion could be denied on this basis. On the other hand, plaintiffs do not dispute the facts set forth by Williams.

F.R.Civ.P. 12(b) provides that a court may treat a 12(b)(6) motion as a motion for summary judgment, F.R.Civ.P. 56, "if matters outside the pleadings are presented to and not excluded by the court." F.R.Civ.P. 12(b). While the rule requires that "all parties shall be given reasonable opportunity to present all materials made pertinent ..." to a summary judgment motion if a 12(b)(6) is so treated, neither party in memoranda filed or at oral argument suggested a need to submit further materials. Problematically, however, although the material facts appear plainly to be undisputed, nonetheless such facts have been submitted to the Court by way of summaries appearing in the parties' memoranda, which presentation would of course be insufficient either to establish a fact or to create a genuine issue of fact were this a factually contested summary judgment motion. *See generally* 6 Moore's Federal Practice, ¶ 56.11 [1.–8] (2nd ed. 1982). Yet, in the interests of judicial economy, and in light of the absence of any genuine dispute as to the facts material to the instant motion, the Court will treat Williams' motion as one for summary judgment and accept the factual summaries as established for the limited purpose of ruling on this motion as though the factual summaries presented were stipulations or "concessions of counsel." *See id.* The material facts being accepted as undisputed, the Court will indulge every inference favorable to the plaintiffs in determining whether Williams is entitled to judgment as a matter of law. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

In their memoranda, plaintiffs set forth the following factual summary:

The decedent Jay Alan King worked as a foreman for Williams of Shelbyville, Indiana from March 1977 through September 1979. Williams is a plastic extrusion company. The decedent's job at Williams obliged him to work on a particular machine extruding Polyvinyl Chloride prepared and sold by Ethyl to Williams. This process placed the Polyvinyl Chloride Polymer under high pressure at high temperatures. The plaintiffs contend that this process released or produced the monomer Vinyl Chloride, which is a known virulent carcinogen, and thereby intensely exposed Jay Alan King to its deadly effects.

Williams obliged Jay Alan King to inhale Polyvinyl Chloride in an unventilated chamber. As a result of these conditions, Jay Alan King became ill with Bile Duct Cancer in July 1981 at which time he returned to his family home in Massachusetts with his wife Linda King, his children Michael and Theresa King and his stepdaughter Katherine Eades. Jay Alan King died in February 1982 at the age of 34 of Bile Duct Cancer.

Plaintiffs' Memorandum in Opposition to Motion to Dismiss, at 1–2. Plaintiffs do not dispute Williams' assertions that: first, Jay Alan King was a resident of Indiana at the time he was hired by Williams, and the contract of hire took place in Indiana; second, any injury to Jay Alan King due to Williams' alleged negligence was the result of conduct which occurred in Indiana; third, Jay Alan King's cancer was first diagnosed in Indiana; and fourth, that Williams was at all times insured under the Indiana Workmen's Compensation Act. See Defendant Williams Industries, Inc.'s Memorandum in Support of Its Motion to Dismiss, at 6.

Taking these facts as established for purposes of addressing Williams' motion, the Court now turns to the legal arguments advanced by the parties.

## II.

A federal court sitting in diversity must apply the substantive law of the forum including its choice of law rules. *Klaxon v. Stentor Electric Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Engine Specialties, Inc. v. Bombardier, Ltd.,* 605 F.2d 1, 19 (1st Cir.1979), *on petition for rehearing,* 615 F.2d 575, *cert. denied,* 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839, *rehearing denied,* 449 U.S. 893, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). *In Re Aircrash*

*Disaster at Boston, Massachusetts, July 31, 1983,* 399 F.Supp. 1106, 1108 (D.Ma.1975). Historically, Massachusetts adhered to the traditional doctrine of *lex loci delecti,* relying on determination of the place of the injury to ascertain what law should be applied in tort cases. *See, e.g., Pevoski v. Pevoski,* 371 Mass. 358, 358 N.E.2d 416, 417 (Mass.1976), *citing Brogie v. Vogel,* 348 Mass. 619, 205 N.E.2d 234 (1965); *Goodale v. Morrison,* 343 Mass. 607, 180 N.E.2d 67 (1962); *Murphy v. Smith,* 307 Mass. 64, 29 N.E.2d 726 (1940). In *Pevoski,* the Supreme Judicial Court indicated that the *lex loci delecti* rule "has provided, and will continue to provide, a rational and just procedure for selecting the law governing the vast majority of issues in multistate tort suits," 358 N.E.2d at 417, yet "recognize[d] that there also may be particular issues on which the interests of *lex loci delecti* are not so strong. Indeed on the particular facts of a case another jurisdiction may sometimes be more concerned and more involved with certain issues than the State in which the conduct occurred." *Id.* Thus, in *Pevoski,* the Supreme Judicial Court held that the *lex loci delecti,* that of New York, would obtain in determining standards of conduct relating to an automobile accident occurring there, but the issue of spousal immunity would be governed by Massachusetts law. *Id.* at 418. *Sub silentio,* the Supreme Judicial Court adopted the approach set forth in the Restatement (Second) of Conflicts of Laws, §§ 145, 146 (1971). Subsequently, in *Saharceski v. Marcure,* 373 Mass. 304, 366 N.E.2d 1245 (Mass.1977), the Supreme Judicial Court expressly cited the Restatement (Second) in applying Massachusetts law to determine the rights and liabilities of two fellow employees involved in an automobile accident while driving through Connecticut. *Id.* at 1248, 1249 n. 6, and 1250. The *Saharceski* case is discussed in more detail, *infra.*

▮ Application of the principles set forth in *Pevoski* and *Saharceski* to the case at bar would seem to mandate the choice of Indiana law to govern the rights and liabilities of the parties. All significant events involved in this litigation between plaintiffs and Williams occurred in Indiana, most notably, the contract of hire, the alleged negligence, the injury to King, and the diagnosis of his terminal cancer. Massachusetts was but a past residence of King and the residence of plaintiffs at the time of King's death. While plaintiffs' counsel suggested at oral argument that Massachusetts has an interest in the welfare of the surviving spouse, stepchild, and children of King because of the possibility that these survivors' destitution might inevitably necessitate Massachusetts financial support, I note that in answers to interrogatories filed on December 20, 1982, plaintiff Linda Jean King listed the residence of herself and the address of her children as Fairland, Indiana. Plaintiff Linda Jean King's Answers to Defendant Ethyl Corporation's First Set of Interrogatories, Answers 1 and 3(d).

The Indiana Workmen's Compensation Act provides in pertinent part that:

> The rights and liabilities herein granted to an employee subject to this act on account of disablement or death by occupational disease arising out of and in the course of the employment shall exclude all other rights and remedies of such employee, his personal representative, dependents, or next of kin, at common law or otherwise, on account of such disablement or death.

Ind.Code § 22–3–7–6 (1976). This statute or its predecessor have been consistently construed by the courts of Indiana to bar actions by employees against employers for negligence and suits by the spouses and dependents or next of kin of employees against employers for loss of consortium or wrongful death. *See, e.g., Stainbrook v. Johnson County Farm Bureau Coop. Ass'n,* 125 Ind.App. 487, 122 N.E.2d 884, 886 (Ind. App.1954) (collecting cases).

If applied, this statute would bar all claims of the plaintiffs against Williams. Plaintiffs, citing *inter alia Kilberg v. Northeast Airlines, Inc.,* 9 N.Y.2d 34, 211 N.Y. S.2d 133, 172 N.E.2d 526 (N.Y.App.1961) and *Mertz v. Mertz,* 271 N.Y. 466, 3 N.E.2d 597 (N.Y.App.1936), maintain that courts of

a forum state need not apply foreign law which is repugnant to the forum state's public policy. The *Mertz* case sets forth the actual rule as expressed in the Restatement (First) of Conflict of Laws § 612 (1934), that the forum state may refuse to recognize a cause of action offensive to the forum state's public policy. 3 N.E.2d at 598 (refusing to recognize tort action between spouses where forum state of New York maintained interspousal immunity, even though state where accident occurred—Connecticut—allowed interspousal suits). *Kilberg* tends more favorably to support plaintiffs' general argument, for in that case the New York forum court refused to apply the limitation on damages contained in the then existing Massachusetts Wrongful Death Statute, observing that both New York and Massachusetts recognized the wrongful death cause of action, but that the Massachusetts damages limitation offended New York public policies in favor of allowing its citizens to recover fully for negligently inflicted death. 172 N.E.2d at 528.

An element of the underlying principle of plaintiffs' argument has at least been adverted to by the Supreme Judicial Court. In *Saharceski v. Marcure, supra,* the court observed that "the law of the forum allowing recovery against a fellow employee has been applied to a local accident in disregard of the exemption contained in the law of the State of employment, perhaps on the ground that the exemption of the foreign law is obnoxious to the forum's public policy...." 366 N.E.2d 1248. Of course, the mention of a local accident distinguishes the quoted language not only from the facts of the *Saharceski* case, but also from the case at bar. The Restatement (Second) of Conflicts of Laws § 184 is contrary to plaintiffs' position with respect to recovery for wrongful death specifically, and in general the principles set forth in § 146 would appear to militate heavily against disregarding the bar of Indiana law on the facts of this case. Moreover, *dicta* in the *Saharceski* case itself strongly suggest that the courts of Massachusetts would not hesitate to apply the bar of Indiana law to this case.

In *Saharceski,* two Massachusetts residents hired by an employer in Massachusetts were involved in an automobile accident while driving through Connecticut in the course of their employment. The employee-passenger brought suit in Massachusetts against the employee-operator of the vehicle seeking to recover damages for alleged negligence. Under Connecticut law, "an employee injured in Connecticut in the course of his employment by the negligent operation of a motor vehicle by a fellow employee may recover from that employee...." 366 N.E.2d at 1247. Massachusetts law precluded such recovery. In ruling that Massachusetts law would be applied to bar recovery, the Supreme Judicial Court opined:

Although the considerations involved in permitting or denying a right of action differ in this case from those present in the *Pevoski* case, there are substantial reasons for looking to the law of Massachusetts to determine whether the plaintiff should be allowed to maintain an action against his fellow employee. Most significant are the expectations of the parties, each of whom was hired and lived in Massachusetts. The workmen's compensation law of this Commonwealth bars an employee from recovering from a negligent fellow employee. An employee, by not reserving his common law rights, is deemed to have waived any claim against a fellow employee regardless of where an accident may occur. The plaintiff had no reasonable basis for expecting to recover in this situation, and the defendant had no reason to expect that he would be liable. Additionally, reference to the place of common employment provides both a certain source for the resolution of the issue and assurance that the ability to maintain a tort action will not turn solely on the fortuitous circumstance of where the accident takes place.... The elimination of happenstance, a sort of unknowing geographical Russian roulette, as the controlling factor is particularly significant in a case where no business

was to be transacted in the jurisdiction where the injury took place.

*Id.* at 1249 (citation omitted).

Distinctions, of course, abound between the circumstances of *Saharceski* and the instant case. Indeed, in *Saharceski,* the Supreme Judicial Court refused to apply the law of the place of the injury, just as the plaintiffs urge this Court to do here, and applied the bar to recovery of the law of the forum state. Plaintiffs here seek to invoke the right of recovery of the forum state, imbue it with the color of public policy, and circumvent the bar to recovery of the state of the place of injury. Beyond these differences, however, is the Supreme Judicial Court's stated preference for avoiding the subversion of legitimate expectations by fortuitous circumstance. In this case, as in *Saharceski,* the defendant certainly had no reason to anticipate liability at common law; plaintiffs had no reasonable basis for expecting recovery. Absent the mere Massachusetts residency of plaintiffs at the time this action was filed, Massachusetts had no connection to this case and currently has no significant interests in the issues raised in the litigation.

Thus, the Court concludes that both the substance and the policies of Massachusetts choice of law rules require the application of Indiana law in this case. The purported public policies of Massachusetts advanced by plaintiffs are insufficient to disturb this conclusion.

## III.

Plaintiffs rely on *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690 (Mass.1980) as "evidence that Massachusetts considers it extremely important to allow dependents of injured employees the opportunity for recovery for their own injuries." Plaintiffs' Memorandum, at 5. In plaintiffs' view, "Massachusetts has clearly enunciated a strong policy in deciding *Ferriter.* It states that it is no longer willing to allow a negligent employer to hide beneath the cloak of the exclusivity clause of the Worker's Compensation Statute." *Id.* The Court is unable to agree.

*Ferriter* was a landmark case, for irrespective of any Workmen's Compensation Statute issues involved, it marked the first time a state court of last resort recognized a right of recovery in a minor dependent child for loss of a parent's society and companionship resulting from a defendant's negligence or intentional wrongdoing. *Id.* at 696. Other courts have subsequently adopted this holding of the case. *See, e.g., Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424 (Mich.1981); *Weitl v. Moes,* 311 N.W.2d 259 (Iowa 1981). The Supreme Judicial Court further held that the spouse and children of one injured by the negligence of another could recover for negligent infliction of mental distress and impaired health resulting from the shock of witnessing the injured individual in a hospital shortly after an accident occurred. This holding was of lesser significance, the Supreme Judicial Court indicating that it was but a logical extension of the principles of proximity previously expounded. 413 N.E.2d at 696–97.

These two holdings of *Ferriter* would have been of no avail to the plaintiffs in that case were it not for the Supreme Judicial Court's third holding. In *Ferriter,* the plaintiffs were the spouse and children of a worker injured in the course of his employment. The defendant argued that the Workmen's Compensation Act, M.G.L. c. 152, barred the plaintiffs' claims. Relying on its precedents and the language of the Massachusetts act, the Supreme Judicial Court stated that an "employee's remedy should be exclusive, and we do not question that ruling today." *Id.* at 700. The court also "acknowledge[d] that [M.]G.L. c. 152, §§ 1(4) and 68, bar a deceased employee's dependents from recovering under [M.]G.L. c. 229 §§ 2 and 2B, [the Massachusetts Wrongful Death Statutes], for loss of consortium, as against an employer covered by [M.]G.L. c. 152." *Id.* at 702. However, the court concluded that the "unusual" Massachusetts statute—one of the "[f]ew exclusive liability provisions in workmen's compensation statutes ... so narrowly drawn ...," *id.* at 700 (footnote omitted)—did not bar the plaintiffs' claims against the de-

fendant employer for loss of consortium and society, *id.* at 703.

Before reaching plaintiffs' policy contentions, the Court notes that *Ferriter* itself makes clear that under Massachusetts law an employee's negligence claims as well as claims for wrongful death against an employer covered by M.G.L. c. 152 are barred. Thus, there is no Massachusetts public policy in conflict with the bar of Ind.Code § 22–3–7–6.

Properly applied, then, Indiana law bars plaintiffs' claims under Counts VIII and XIV of the initial and amended complaints and Williams is entitled to judgment on those counts as a matter of law.

With respect to the specific policy arguments raised by plaintiffs, *Ferriter* cannot be said to manifest a Massachusetts public policy of preventing a negligent employer from hiding "behind the cloak" of a statutory exclusivity clause. Indeed, as to an employee, or where negligence causes death, a covered employer may yet so "hide." 413 N.E.2d at 702. Rather, *Ferriter* revealed, albeit to the surprise of many, that the Massachusetts legislature never fashioned such a cloak, such that "[i]n Massachusetts, employers within the compensation act have never been in a position to rely on determinate liability for derivative third party injuries. This is the legacy of the *King* [*v. Viscoloid*, 219 Mass. 420, 106 N.E. 988 (Mass.1914)] decision and our unusual statute, [M.]G.L. c. 152, § 24, whose language unambiguously limits the scope of the employee's waiver." 413 N.E.2d at 700, (footnotes omitted). In its extended discussion in both the text and notes, the court in *Ferriter* does not once suggest that "usual" exclusivity clauses are repugnant to the policies of Massachusetts. Indeed, the entire analysis makes no mention of policy considerations. Even if the Massachusetts statute and the *Ferriter* decision are construed together as an overriding expression of the public policies of the Commonwealth, what remains is the complete absence of any significant interest of the Commonwealth of Massachusetts in dictating the rights and liabilities of Indiana employees, their spouses, and their next of kin vis-a-vis Indiana employers. That Indiana maintains remedies under Workmen's Compensation as the exclusive means of recovery for employees' spouses and next of kin ought not be affected by the Commonwealth's election of an alternative approach to governing the rights and liabilities of those parties unless some significant interest of Massachusetts is affected. In light of the *Saharceski dicta,* the approach suggested by the Restatement (Second) of Conflicts of Laws, and the very limited holding in *Ferriter,* the Court concludes that there are no Massachusetts public policy constraints to the application of Indiana law to the claims of the decedent King's spouse, stepchild, and children, and that Williams is entitled to judgment on Counts IX through XII of the complaint.

### Conclusion

For the reasons stated, the Court has determined that Williams' motion to dismiss may be treated as a motion for summary judgment; that there are no genuine issues of material fact; and that Williams is entitled to judgment on all of the plaintiffs' claims against it since the courts of Massachusetts would apply Indiana law to the facts of this case, and Indiana law clearly bars the plaintiffs' claims.

An appropriate Order shall issue.