Betty ALVES, et al., Plaintiffs,

v.

SIEGEL'S BROADWAY AUTO PARTS, INC., Defendant/Third–Party Plaintiff,

v.

LEACH COMPANY, INC., Third–Party Defendant.

Civ. A. No. 87–533–H.

United States District Court, D. Massachusetts.

March 28, 1989.

Edward Kelley and Robert J. Hoffer, Barron & Stadfeld, Boston, Mass., for Betty Alves, et al.

George E. Wakeman, Jr., Melick & Porter, Boston, Mass., for Leach Co., Inc.

John D. Cassidy, Ficksman & Conley, Boston, Mass., for Siegel's Broadway Auto Parts, Inc.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This case presents a choice of law question regarding a state statute of repose. The issue is before the Court on the motion of third-party defendant Leach Company, Inc. ("Leach") for summary judgment. Jurisdiction is proper under 28 U.S.C. § 1332.

### I. BACKGROUND

The facts giving rise to this lawsuit are relatively simple. Plaintiffs sue as administratrices of decedent's estate, alleging in a three-count complaint that decedent was crushed to death during the course of his employment by the compacting unit on a trash collecting truck. Plaintiffs contend that defendant, Siegel's Broadway Auto Parts, Inc. ("Siegel"), from whom decedent's employer purchased the truck, is liable in negligence, breach of warranty, and strict liability. Third-party defendant Leach, the manufacturer of the truck's compacting mechanism, is alleged to be liable under theories of contribution and indemnification for any liability which might be assessed against Siegel.

### II. PROCEDURE

The parties have arrived in this Court by a rather circuitous route. Plaintiffs originally proceeded directly against Leach in a suit filed in Connecticut Superior Court on June 21, 1985, nearly two years after decedent's death. Defendant Siegel was not named in that complaint. Leach filed a motion for summary judgment in the Connecticut action on March 24, 1986, arguing that a Connecticut statute of repose precluded plaintiffs' recovery. The instant action was filed by plaintiffs in Massachusetts Superior Court on July 17, 1986, naming only Siegel as a defendant. Siegel impleaded the third party Leach on January 29, 1987, and Leach removed the case to this Court on March 4, 1987. Summary judgment was granted in Leach's favor in

the Connecticut action two weeks later, and Leach now moves for summary judgment in this Court on essentially the same ground.

## III. THE ISSUE

The facts giving rise to this diversity action revolve around two states, and thus the applicable law could possibly emanate from one or more of three jurisdictions: (1) Connecticut, the state (i) where the plaintiffs are domiciled, (ii) where the plaintiffs' decedent was domiciled, (iii) where decedent's employer, the purchaser of the trash collecting truck, was domiciled, and (iv) where the injury occurred; (2) Massachusetts, the state (i) of defendant Siegel's incorporation and principal place of business, (ii) from which the compacting unit was ordered and to which it was delivered by Leach, (iii) in which the sale of the trash truck from Siegel to the decedent's employer took place, and (iv) in which this federal court is exercising its diversity of citizenship jurisdiction; and (3) the United States, which is providing the forum for this action.

The movant Leach supports its claim of non-liability with the following language of the Connecticut statute:

> [n]o product liability claim ... may be brought against any party *nor may any party be impleaded* ... later than ten years from the date that the party last parted with possession or control of the product.

Conn.Gen.Stat. § 52–577a(a) (emphasis supplied). It is undisputed that, if applicable, this law would preclude liability of Leach. It is also undisputed that no other involved jurisdiction has such a law. The issue, then, is whether a federal court, exercising diversity of citizenship jurisdiction in the District of Massachusetts, should apply the Connecticut statute of repose to deny a

third-party claim of contribution and indemnification in this products liability action.

## IV. DISCUSSION

■ A federal court sitting in diversity jurisdiction applies the substantive law of the forum state, *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including its choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Statutes of repose are, under federal law, substantive in nature. *See Arrieta–Gimenez v. Arrieta–Negron,* 859 F.2d 1033, 1036 (1st Cir.1988). Accordingly, this Court looks toward Massachusetts law.

■ Since the analysis of Massachusetts law may involve a choice of law, this Court first seeks to determine whether there is a legislative directive, or "borrowing statute," as to what sovereign should supply the law. *See Vaughn v. J.C. Penney Co.,* 822 F.2d 605, 611 (6th Cir.1987); *see also Restatement (Second) of Conflict of Laws* (hereinafter "Second Restatement") § 6(1) (1969) ("A court ... will follow a statutory directive of its own state on choice of law"). Leach argues, quite correctly, that Mass.Gen.L. ch. 260, § 9 is just such a borrowing statute. Leach is incorrect, however, in its assertion that the borrowing statute applies in this case. The statute provides that "no action shall be brought by any person upon a cause of action which was barred by the laws of any state or country while he resided therein." Mass.Gen.L. ch. 260, § 9. The claims put in issue by this motion are not the primary, first-party claims of the Connecticut plaintiffs, but rather the third-party derivative claims of Siegel, the Massachusetts defendant. Since the statute of repose is a Connecticut law, and Siegel is a Massachusetts resident, Siegel's claims are not barred by the laws *of its state,* and the borrowing statute does not by its terms apply.[1]

---

1. There is an additional reason why the borrowing statute does not support Leach's position. The statute contains language regarding tolling of statutes of limitation, as well as the above-quoted language regarding borrowing. Massachusetts courts have interpreted the borrowing clause as modifying the statute's language regarding tolling. *Wilcox v. Riverside Park Enter.,* 399 Mass. 533, 539, 505 N.E.2d 526, 530 (1987). It has, therefore, no independent force of its own, and no application in a case such as this where no party asserts that the Massachusetts statute of limitation has been tolled due to the defendant having resided out of state.

Having determined that there is no applicable legislative directive, the Court must now look to the forum state's choice of law method. This analysis requires the Court to retrace a step, this time under the guidance of state law. In other words, the Court must determine whether, under state law, the issue is to be regarded as substantive or procedural. If the forum state views the issue as procedural, this Court applies the law of the forum and declines to apply the Connecticut statute. *See Sampson v. Channell*, 110 F.2d 754, 759 (1st Cir.), *cert. denied*, 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415 (1940). If, however, Massachusetts views the issue as substantive, this Court declines to apply the *lex fori* automatically, and instead looks toward the forum state's choice of law rules to determine which state's law should control. *Id.*[2]

No Massachusetts court has considered the question of whether, under its choice of law rules, a statute of repose is substantive or procedural. Statutes of repose are somewhat analogous to statutes of limitation, however, and it is clear that Massachusetts views statutes of limitation as pro-cedural. Accordingly, Massachusetts courts decline to bar actions by application of another state's statute of limitation even if the other state is supplying the substantive law as to the cause of action being sued upon. *See Wilcox v. Riverside Park*, 21 Mass.App.Ct. 419, 421, 487 N.E.2d 860, 861 (1986) ("Massachusetts views statutes of limitation as relating to the remedy, and it applies its own law as the law of the forum"), *rev'd. on other grounds*, 399 Mass. 533, 505 N.E.2d 526 (1987); *Clark v. Pierce*, 215 Mass. 552, 553, 102 N.E. 1094 (1913); *Hemric v. Reed and Prince Mfg.*, 739 F.2d 1, 2–3 (1st Cir.1984) ("We are aware of no case suggesting that Massachusetts would abandon the traditional rule that the local law of the forum determines whether an action is barred by a statute of limitations"); *Wilson v. Hammer Holdings, Inc.*, 671 F.Supp. 94, 96 (D.Mass.1987) ("While Massachusetts has adopted modern choice of law analysis for substantive contract law issues, statutes of limitation are considered procedural rather than substantive"), *aff'd* 850 F.2d 3 (1st Cir.1988). Massachusetts is not unique for maintaining

---

**2.** This analysis may appear unnecessarily duplicative, since it involves deciding whether the issue is substantive or procedural under federal law, and then making the same determination again under state law. Settled precedent, however, "rejects the notion that there is an equivalence between what is substantive under the *Erie* doctrine and what is substantive for purposes of conflict of laws ... the terms 'substance' and 'procedure' precisely describe very little except a dichotomy, and what they mean in a particular context is largely determined by the purposes for which the dichotomy is drawn." *Sun Oil Co. v. Wortman*, —— U.S. ——, ——, 108 S.Ct. 2117, 2124, 100 L.Ed.2d 743 (1988). The purposes for which the dichotomies are drawn ought, however, to be similar, and the separate determinations ought, therefore, to achieve the same result;

> It is submitted that the *Erie* outcome test can furnish [a conflicts] guide, for the *underlying rationale for the application of the state law in an Erie situation is substantially the same as the rationale for the application of the lex loci in a conflicts situation*. The sole purpose of a federal court in a diversity case is to furnish an impartial forum. The only purpose of a court in a conflicts case, once it has decided that it will look to the law of another state, is to serve as a forum of convenience. In each

situation the court should use as a model as much of the law of the reference point as will materially affect the outcome.

Sedler, The *Erie* Outcome Test as a Guide to Substance and Procedure in the Conflicts of Laws, 37 N.Y.U.L.Rev. 813, 821–822 (1962) (emphasis in original). That the separate determinations ought to reach the same result, however, does not mean that they do: *See, e.g., Sampson v. Channell*, 110 F.2d at 762 ("This result may seem to present a surface incongruity, viz., the deference owing to the substantive law of Massachusetts as pronounced by its court requires the federal court in that state to apply a Massachusetts rule as to burden of proof which the highest state court insists is procedural only"). When each separate determination is that the issue is substantive, moreover, the federal court may be required to wander very far afield. *Cf. Nolan v. Transocean Airlines*, 276 F.2d 280, 281 (2d Cir.1960) (Friendly, J.) ("Our principal task, in this diversity of citizenship case, is to determine what the New York courts would think the California courts would think on an issue about which neither has thought"). The justification, however, lies in "reasons of policy, set forth in the [*Erie v.*] *Tomkins* case, [which] make it desirable for the federal court in diversity of citizenship cases to apply the state rule," including its conflicts rule. *Sampson v. Channell*, 110 F.2d at 762.

this view. *See, e.g.,* Second Restatement § 142(2) ("An action will be maintained if it is not barred by the statute of limitations of the forum, even though it would be barred by the statute of limitations of another state") and cases cited therein at the reporter's note. Most adherents to this view make an exception, however, when the asserted statute of limitation is so specific to the right being sued upon that it can be viewed as a condition of the right's creation and a part of the right itself. In such instances, the right-specific statute of limitation is viewed as substantive; the forum state accordingly declines to apply its own statute as a matter of procedure, but rather applies the statute of the state supplying the substantive law. *See, e.g.,* Second Restatement § 143 ("An action will not be entertained in another state if it is barred in the state of the otherwise applicable law by a statute of limitations which bars the right and not merely the remedy") and cases cited therein at the reporter's note.

This distinction is not immediately dispositive of the issue before the Court, for two reasons. First, Massachusetts has not explicitly recognized an exception to its longstanding (and recently reaffirmed, *see Wilcox v. Riverside Park Enter., supra*) rule that statutes of limitation are procedural, and its choice of law decisions reveal no inclination toward recognizing such an exception. In *Rose v. Town of Harwich*, however, the First Circuit recognized the distinction while discussing the preclusive

effect, under Massachusetts law, of a statute of limitation-based dismissal on subsequent litigation;

A typical statute of limitations might, for example, extinguish the plaintiff's "remedy" in State A, but would not in itself necessarily stop him from enforcing his substantive "right" in State B, which may apply a different limitations provision.

778 F.2d 77, 80 (1st Cir.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986). While *Rose* left open the question of whether "Massachusetts would deem the 'right'/'remedy' distinction relevant in determining the preclusive effect of limitations-based dismissals," it nonetheless cited Massachusetts precedent establishing the distinction and accepting its validity in other contexts. *Id.* at 81; *cf. Little v. Blunt,* 26 Mass. 488, 491–92 ("If the debt remained, the remedy was gone [, but] a debt barred by the statute of limitations is a good consideration for an express promise").[3]

A second factor complicating the analysis under state law is that, despite the similarities between statutes of repose and statutes of limitation, Massachusetts courts clearly perceive each to be of a significantly different character. *See, e.g., Tindol v. Boston Housing Authority,* 396 Mass. 515, 519, 487 N.E.2d 488, 490 (1986) (contrasting the two types of statutes, the court stated that a statute of repose "is of an entirely different legal genre"); *Klein v. Catalano,* 386 Mass. 701, 702, 437 N.E.2d 514, 516

---

**3.** *Rose* actually takes a dim view of the issue presented by the case at bar, citing the following language of the Supreme Court; "[t]here has been considerable academic criticism of the rule that permits a forum state to apply its own statute of limitations regardless of the significance of contacts between the forum state and the litigation." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 778, 104 S.Ct. 1473, 1480, 79 L.Ed. 2d 790 (1984), *cited in Rose v. Town of Harwich,* 778 F.2d at 80–81. This Court also takes a critical view of the rule, and takes a critical view of the right/remedy distinction as well; "the distinction amounts to nothing, because to deny all remedy, direct or indirect, within the state is practically to deny the right." *Davis v. Mills,* 194 U.S. 451, 456–57, 24 S.Ct. 692, 694–95, 48 L.Ed. 1067 (1903). Under the federal *Erie* test, which ought to reach the same result as the

state conflicts test (*see* note 2, *supra*), statutes of limitation are viewed as outcome determinative, and therefore substantive. Accordingly, they are supplied not by the federal court as the forum, but rather by the forum state as the provider of substantive law. *See, e.g., Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *cf. Unif. Conflict of Laws—Limitations Act* § 2 (1982) (stating the rule that the limitation period applicable shall be that of the state which supplies the substantive law upon which the claim is based). This can not end the matter, however, for a federal diversity court is called upon to discern what would be the position of the state courts, and not to substitute its own position. Otherwise, "the ghost of *Swift v. Tyson* ... still walks abroad." *Sampson v. Channell,* 110 F.2d at 761.

(1982) ("General Laws ch. 260, § 213, is not a statute of limitations but a statute of repose"); *James Ferrera & Sons v. Samuels,* 21 Mass.App.Ct. 170, 173, 486 N.E.2d 58, 60 (1985) ("There is a marked difference between a statute of limitations and a statute of repose").

The difference which the state courts perceive in the two types of limiting statutes is well stated in *James Ferrera & Sons;* "[u]nlike a statute of limitations, which bars a cause of action if not brought within a certain time period, a statute of repose prevents a cause of action from arising after a certain period." 21 Mass. App.Ct. at 173, 486 N.E.2d at 61. A statute of limitation can extinguish a cause of action only after an injury has occurred; when a statute of repose extinguishes a cause of action, however, "[t]he injury need not have occurred, much less have been discovered." *Klein,* 386 Mass. at 702, 437 N.E.2d at 516. The conventional statute of limitation, therefore, simply limits the time in which an action may be brought. The statute of repose, by contrast, "completely eliminates" and "abolishes" the cause of action. *Klein,* 386 Mass. at 702–03, 437 N.E.2d at 516–17. Stated differently, "[t]he bar of a statute of repose is absolute, whereas the bar of a statute of limitations is conditional." *Tindol,* 396 Mass. at 519, 487 N.E.2d at 491 (*quoting James Ferrera & Sons,* 21 Mass.App.Ct. at 173, 486 N.E.2d at 61).

The above-cited cases provide this Court with guidance sufficient to conclude that Massachusetts courts would view the instant statute of repose as substantive. While *Wilcox, Hemric* and *Wilson, supra,* state the general rule that statutes of limitation are procedural, *Rose v. Harwich, supra,* the Second Restatement § 143, *supra,* and logic suggest that this rule is, or should be, narrowly applied so that the forum state considers the statute substantive when the limitation is tied closely to the right. The *Tindol, Klein* and *James*

*Ferrera & Sons* line of cases, *supra,* indicate that statutes of repose relate to the very existence of the cause of action itself and thus affect rights more directly, or perhaps more profoundly, than do statutes of limitation. Statutes of limitation, moreover, often reflect concern with the procedural difficulties inherent in litigating stale claims. *Sun Oil Co. v. Wortman,* —— U.S. at ——, 108 S.Ct. at 2123. The instant statute of repose, by contrast, appears to reflect a belief that products should not be expected to last forever, and that ten years is appropriately considered the expiration of a product's useful life for liability purposes. For these reasons, the Court is confident that a Massachusetts court would read the precedent as indicating that statutes of repose are substantive in nature. Other courts have so held. *See, e.g., Arrieta–Gimenez v. Arrieta–Negron, supra,* 859 F.2d at 1036 (applying Puerto Rico choice of law rules); *President and Directors v. Madden,* 660 F.2d 91, 94 (4th Cir.1981) (applying Maryland choice of law rules); *Pottratz v. Davis,* 588 F.Supp. 949, 952–3 (D.Md.1984) (same). Accordingly, the Court proceeds to an analysis of state choice of law principles to determine whether, on the facts of the case at bar, Connecticut is the appropriate law-giver.

At one time, Massachusetts employed a strict territorial approach. Issues relating to tort were resolved in accordance with the *lex loci delicti. See, e.g., Brogie v. Vogel,* 348 Mass. 619, 621, 205 N.E.2d 234, 236 (1965). Issues relating to contract were resolved in accordance with the *lex loci contractus. See, e.g., Cameron v. Gunstock Acres, Inc.,* 370 Mass. 378, 381– 82, 348 N.E.2d 791, 793 (1976). Whatever the shortcomings of such a method, it had the virtue of simplicity and predictability of result. In the case at bar, for instance, there is no doubt but that the law of Connecticut would apply as the state where the injury occurred.[4]

---

4. The only claim in either the original or the third-party complaint which could be characterized as sounding in anything but tort is the claim for breach of warranty. It is clear, however, that under Massachusetts law "a claim for breach of warranty of merchantability is in essence a tort claim [and therefore] it is appropriate to view the choice of law issue raised by the [breach of warranty] claim in light of choice of law principles applicable in tort actions." *Co-*

Recent Massachusetts choice of law decisions have rendered the approach significantly more complex. It is clear that Massachusetts no longer follows the strict territorial approach of *lex loci delicti* in tort actions. *See, e.g., Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 333, 450 N.E.2d 581, 585 (1983); *Saharceski v. Marcure*, 373 Mass. 304, 310–11, 366 N.E.2d 1245, 1249 (1977); *Pevoski v. Pevoski*, 371 Mass. 358, 360, 358 N.E.2d 416, 417 (1976). The place of the wrong remains, however, an important consideration. *See Cohen v. McDonnell Douglas Corp.*, 389 Mass. at 333–336, 450 N.E.2d at 584–86 (analyzing a breach of warranty claim "in light of choice of law principles applicable in tort actions," the Supreme Judicial Court stated that the "place where the injury occurred 'is the place where the last event necessary to make an actor liable for an alleged tort takes place,'" and then devoted several pages of text to determining where that event occurred); *see also Ahmed v. Boeing Co.*, 720 F.2d 224, 226 (1st Cir.1983) (interpreting *Pevoski* to indicate that "in tort cases Massachusetts generally follows doctrine of *lex loci delicti*"); *Continental Cablevision, Inc. v. Storer Broadcasting Co.*, 653 F.Supp. 451, 454 (D.Mass.1986) ("while the traditional rule of *lex loci delicti* no longer strictly controls choice of law questions in tort suits ... it still provides a useful rule for most multi-state torts"); *King v. Williams Indus.*, 565 F.Supp. 321, 325 (D.Mass.1983) ("In *Pevoski*, the Supreme Judicial Court indicated that the *lex loci delicti* rule 'has provided, and will continue to provide, a rational and just procedure for selecting the law governing the vast majority of issues in multistate tort suits'"), *aff'd* 724 F.2d 240, 241 (1st Cir.), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984); *Schulhof v. Northeast Cellulose, Inc.*, 545 F.Supp. 1200, 1203 (D.Mass.1982) ("Essentially, then, *Pevoski* stands for the following propositions of law ... a) *lex loci delicti* would continue as the general tort conflicts rule governing most issues in multi-state tort suits").

The current approach appears to be a bit of a hybrid, mixing *lex loci delicti* and the Second Restatement's "most significant relationship" test. *See Cohen v. McDonnell Douglas Corp.*, 389 Mass. at 333, 450 N.E. 2d at 585 ("ordinarily the substantive law governing an action of tort for physical injury is that of the place where the physical injury occurred [but] on the particular facts of a case another jurisdiction may sometimes be more concerned and more involved with certain issues"); *Pevoski v. Pevoski*, 371 Mass. at 359–60, 358 N.E.2d at 417 ("there also may be particular issues on which the interests of *lex loci delicti* are not so strong [and] another jurisdiction may sometimes be more concerned and more involved with certain issues than the State in which the conduct occurred"); *Engine Specialties, Inc. v. Bombardier, Ltd.*, 605 F.2d 1, 19 (1st Cir.1979), *cert denied*, 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980); *Emery Corp. v. Century Bancorp, Inc.*, 588 F.Supp. 15, 16 (D.Mass.1984) ("Massachusetts has abandoned strict adherence to the rule of *lex loci delicti* ... and has adopted a flexible approach to choice of law questions which is similar to the approach used in the *Restatement (Second)*"); *Church of Scientology v. Flynn*, 578 F.Supp. 266, 267 (D.Mass.1984) ("Whether I apply the doctrine of *lex loci delicti* [citation omitted] or the interests analysis embodied in *Restatement (Second)* [citation omitted], the result is the same"); *cf. Computer Sys. Eng'r, Inc. v. Quantel Corp.*, 740 F.2d 59, 70 (1st Cir. 1984) ("a Massachusetts court would apply a test not materially different from that of the *Restatement (Second)*"); *Freeman v. World Airways, Inc.*, 596 F.Supp. 841, 845 (D.Mass.1984) ("Massachusetts would follow an analysis similar to if not identical with that of the *Restatement (Second)*"); *King v. Williams Indus.*, 565 F.Supp. at 324 ("*Sub silentio*, the Supreme Judicial Court adopted the approach set forth in the *Restatement (Second) of Conflict of Laws* §§ 145, 146"). Choice of law in tort actions was discussed most recently in *Cohen v. McDonnell Douglas Corp.*, where the Supreme Judicial Court selected the law of

*hen v. McDonnell Douglas Corp.*, 389 Mass. 327, 332–33, 450 N.E.2d 581, 584 (1983).

the place of the injury after concluding that, under § 146 of the Second Restatement, no other state had a "more significant interest."[5]  389 Mass. at 336, 450 N.E.2d at 586.  Evaluation of the significance of a state's interests is determined, under § 146, by examining the principles of § 6, which section is set forth below.[6]

Applying the Massachusetts hybrid approach, the Court finds that Connecticut should supply the substantive law.  Connecticut is the place of the injury, and thus its law should be supplanted only if Massachusetts has a more significant relationship to the cause of action.  *See Cohen,* 389 Mass. at 336–37, 450 N.E.2d at 586; *Schulhof,* 545 F.Supp. at 1203.  Were Siegel's claim of indemnification based on an express contractual provision, this Court might be inclined to accord substantial weight to "the protection of justified expectations," Second Restatement § 6(d), and apply the law of Massachusetts as the state from which the order was placed and to which the compactor was delivered.  Leach and Siegel have had no contractual relationship, however, and this action is not in contract but rather in tort.  *See id.* at

§ 6, comment g ("There are occasions, particularly in the area of negligence, where the parties act without giving thought to the legal consequences of their conduct or to the law that may be applied.  In such situations, the parties have no justified expectations to protect").  Although Massachusetts does have a legitimate interest in allowing its retailers to delegate liability by impleading third-party manufacturers, this interest is not sufficient to overcome the interest of Connecticut in extinguishing liability for products the useful lives of which have expired.  Particularly is Massachusetts' interest insufficient where, as here, its retailer sold the product to a Connecticut domiciliary.  Accordingly, "the relevant polic[y] of the forum" is implicated, *id.* at § 6(b), but is insufficient when compared to "the relevant policies of other interested states [Connecticut] and the relative interests of those states in the determination of the particular issue." *Id.* at § 6(c).  The "needs of the interstate ... system," *id.* at § 6(a), counsel the application of Connecticut law, since "harmonious relations" are not fostered when Massachusetts allows liability which Connecticut has already de-

---

5.  *Cohen's* use of the phrase "more significant *interest*" (emphasis supplied) is typical of many Massachusetts choice of law cases.  *See, e.g., Engine Specialties, Inc. v. Bombardier, Ltd.,* 605 F.2d at 19 ("[Massachusetts] would look to the law of the jurisdiction having the strongest interest"); *Emery Corp. v. Century Bancorp, Inc.,* 588 F.Supp. at 18 ("[Massachusetts] would resolve this issue by comparing the strength of the governmental interests at stake"); *Computer Sys. Eng'r v. Quantel Corp.,* 571 F.Supp. 1365 at 1368 ("[Massachusetts] would look to the law of the jurisdiction having the strongest interest"), *aff'd* 740 F.2d 59, 70 (1st Cir.1984); *Schulhof v. Northeast Cellulose, Inc.,* 545 F.Supp. at 1203 ("Another jurisdiction might have a greater interest such that the law of that jurisdiction should control").  Like these other cases, however, *Cohen* cites and applies the criteria of the Second Restatement.  It is most likely, therefore, that the test which these courts apply is the "most significant *relationship*" test of the Second Restatement, and not the governmental "*interest* analysis" test pioneered by Professor Currie, *see* B. Currie, *Selected Essays on the Conflict of Laws* 183–187 (1963), and adopted by states such as New York.  *See, e.g., Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (N.Y.1985).  Conventional interest analysis differs from other

methods in that it looks primarily at the interests of the parties' states of domicile, which interests are evaluated, compared, and reconciled if in conflict.  Were conventional interest analysis a favored approach in Massachusetts, this Court would consider the law and policy of Wisconsin, since Wisconsin is the state in which Leach was incorporated and in which it maintains its principal place of business.  Since Wisconsin is of minimal significance given the Massachusetts approach, however, the Court declines to undertake this foray.

6.  § 6  *Choice-of-Law Principles*
   (2) When there is no [contrary statutory] directive, the factors relevant to the choice of the applicable rule of law include
   (a) the needs of the interstate and international systems,
   (b) the relevant policies of the forum,
   (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
   (d) the protection of justified expectations,
   (e) the basic policies underlying the particular field of law,
   (f) certainty, predictability and uniformity of result, and
   (g) ease in the determination and application of the law to be applied.

nied, nor is "commercial intercourse" furthered by denying Connecticut the application of a law the effect of which should be to encourage the exchange of products within its borders. *Id.* at § 6, comment d. The remaining factors ("the basic policies underlying the particular field of law," *id.* at § 6(e), "certainty, predictability, and uniformity of result," *id.* at § 6(f), and "ease in the determination and application of the law to be applied," *id.* at 6(g)) point neither toward one state nor the other. This is so because the policies underlying the law of products liability are reflected in the policies of the two states, the competing laws are easily determined and applied, and neither party appears to have planned its conduct with legal consequences in mind. *Cf. id.* at § 6, comment i ("Predictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions"). Under both the *lex loci* and the Second Restatement strains of the Massachusetts hybrid approach, therefore, the Connecticut statute of repose applies.[7]

The movant Leach posits an alternative analytical route by which the Court could reach this same result. Instead of examining the Massachusetts precedent to determine whether a statute of repose is conflicts-substantive or conflicts-procedural, Leach would have the Court proceed directly to § 143 of the Second Restatement; "[a]n action will not be entertained in another state if it is barred in the state of the otherwise applicable law by a statute of limitations which bars the right and not merely the remedy." Applying § 143, the Court would first inquire as to whether

"the limitation provision was directed to the right 'so specifically as to warrant saying that it qualified the right.'" *Id.* at § 143, comment c, (quoting *Davis v. Mills, supra,* 194 U.S. at 454, 24 S.Ct. at 693). Concluding that the Connecticut statute of repose is directed specifically to the right to maintain a products liability action, the Court could then determine that the statute "bars the right and not merely the remedy." *Id.* at § 143. An analysis of the principles set forth in § 6 would indicate that Connecticut is "the state of the otherwise applicable law," *id.* at § 143, and the Connecticut statute of repose would accordingly apply.

Leach's argument has a great deal of appeal to it, and this Court would not hesitate to favor Leach's approach were it not for the constraints of Massachusetts precedent. In support of its approach, Leach argues that the Second Restatement is "an authority the Massachusetts Supreme Judicial Court has regularly looked to for guidance in opinions employing modern conflict analysis." *Hemric v. Reed and Prince Mfg.,* 739 F.2d at 3. At the same time, however, Massachusetts has not backed off entirely from the traditional *lex loci* approach, *see Cohen, King v. Williams Indus.,* and *Schulhof v. Northeast Cellulose, Inc., supra,* and the Appeals Court of Massachusetts recently reaffirmed the traditional *lex loci* approach to statutes of limitation in language which the Supreme Judicial Court left entirely intact while reversing on other grounds. *See Wilcox v. Riverside Park Enter., supra,* 21 Mass. App.Ct. at 421, 487 N.E.2d at 861. Additionally, the *Tindol, Klein,* and *James Ferrera & Sons, Inc.* line of cases, *supra,*

7. The Court declines specifically to analyze the case at bar under Professor Leflar's "better law" approach, despite the indication of the Supreme Judicial Court that the approach might be coming into favor; "[a]lternatively, we could consider the five considerations proposed by Professor Leflar ... [w]e agree with Professor Leflar that these five considerations generally parallel the considerations contained in longer lists, including § 6(2) of the Second Restatement." *Bushkin Assoc. v. Raytheon Co.,* 393 Mass. 622, 634, 473 N.E.2d 662, 670 (1985). The only consideration which is both present in Professor Leflar's list and absent from the Second Restatement is

"[a]pplication of the better rule of law." *Id.* at 634, n. 7, 473 N.E.2d at 670, n. 7. Absent a clearer command of the Supreme Judicial Court, the Court is reluctant to resolve this case by second-guessing the Connecticut legislature as to the wisdom of enacting such a law, or by second-guessing the decision of the Massachusetts legislature not to enact such a law. *See also Bi-Rite Enter. v. Bruce Miner Co.,* 757 F.2d 440, 443 (1st Cir.1985) (noting *Bushkin's* mention of the Leflar considerations, but opting instead to apply exclusively the criteria of § 6(2) of the Second Restatement).

suggest that Massachusetts courts, even if they were to embrace the Second Restatement without qualification, might not apply its sections discussing "statute[s] of limitations" to a statute of repose. In sum, Leach's argument is quite persuasive; the Court is constrained, however, to travel an alternate route to the same result.

For the foregoing reasons, the Court concludes that the Connecticut statute of repose, Conn.Gen.Stat. § 52–577a(a), precludes Siegel from impleading the third party Leach, and accordingly GRANTS Leach's motion for summary judgment as to both counts of the third-party complaint.